J-A35016-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| LAPHON GRAY, | |
| Appellant | No. 1502 WDA 2013 |

Appeal from the Judgment of Sentence entered August 21, 2013,
in the Court of Common Pleas of Allegheny County,
Criminal Division at No(s): CP-02-0008435-2012

BEFORE:  BENDER, P.J.E., BOWES, and ALLEN, JJ.

MEMORANDUM BY ALLEN, J.:                    **FILED DECEMBER 24, 2014**

Laphon Gray ("Appellant") appeals from the judgment of sentence imposed after a jury convicted him of carrying a firearm without a license, possession of a controlled substance with intent to deliver, and possession of a controlled substance.[1]

The trial court detailed the pertinent facts and procedural history as follows:

> On the night of March 28, 2012, [Detectives Kennedy, Love, Pacheco and Stroschein of the City of Pittsburgh Police] were patrolling a high crime area of the North Side of the City of Pittsburgh [in plain clothes and an unmarked vehicle, at approximately 10 p.m.].  As they were driving, they saw three males, including [Appellant], standing at an intersection.  They witnessed [Appellant] grab his waistband with two hands and crouch down in an attempt to conceal himself behind one of the

---

[1] 18 Pa.C.S.A. § 6106, and 35 Pa.C.S.A. § 780-113(a)(30) and (16).

other males.  [Appellant's] actions led the officers to believe that he had a firearm in his waistband.  When the police identified themselves to [Appellant], he lifted up the object in his waistband, looked around, and fled.  A pursuit ensued and the police saw [Appellant], with his right hand, pull out a firearm from his waistband and throw it along with two white rectangular objects, believed to be narcotics.  [Appellant] was apprehended and the firearm was recovered.  Three feet away from the gun, the police found two rectangular bundles containing 100 white stamp packets.  The stamp packets contained a total of 2.61 grams of heroin.  [A search of Appellant yielded $24 and a cell phone.]

The firearm was tested and found to be in good operating condition.  [Appellant] was 19 years of age at the time of this incident and was ineligible to carry a firearm.  An expert testified at trial that [Appellant] possessed the heroin with the intent to deliver it.

Trial Court Opinion, 4/23/14, at 1; *see also* N.T., 5/28/13, at 6-28; N.T., 5/31/13, at 65.

Appellant was charged with firearms not to be carried without a license, possession with intent to deliver heroin, and possession of heroin. Appellant filed a suppression motion on October 24, 2012, which, following a hearing on May 28, 2013, the trial court denied.  A jury trial commenced on May 31, 2013, at the conclusion of which the jury rendered its verdicts.

Following a sentencing hearing, the trial court, on August 21, 2013, sentenced Appellant to 5 to 10 years of imprisonment, to be followed by five years of probation.  Appellant filed a timely notice of appeal.  Both Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant presents two issues for our review:

1. DID THE POLICE VIOLATE [APPELANT'S] RIGHTS UNDER ARTICLE 1 SECTION 8 OF THE PENNSYLVANIA CONSTITUTION AND THE FOURTH AMENDMENT OF THE UNITED STATES CONSTITUTION BY SEIZING HIS PERSON WITHOUT REASONABLE SUSPICION, AND, AS A RESULT, THE TRIAL COURT ERRED IN NOT SUPPRESSING THE FRUITS OF THAT CONSTITUTIONAL VIOLATION?

2. DID THE COMMONWEALTH FAIL TO PRODUCE SUFFICIENT EVIDENCE TO PROVE BEYOND A REASONABLE DOUBT THAT [APPELLANT] POSSESSED HEROIN WITH INTENT TO DELIVER?

Appellants' Brief at 4.

In his first issue, Appellant argues that the Commonwealth failed to demonstrate that police had reasonable suspicion that criminal activity was afoot to justify the investigative detention of Appellant, and therefore the trial court erred in denying Appellant's suppression motion. Our scope and standard of review is well-settled:

> An appellate court's standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. [Because] the prosecution prevailed in the suppression court, we may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the trial court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

*Commonwealth v. Reese*, 31 A.3d 708, 721 (Pa. Super. 2011) (citations omitted).

Here, Appellant argues that Officer Kennedy's observations of Appellant "grabbing his waistband" and "crouching" did not amount to

- 3 -

reasonable suspicion of criminal activity because under the totality of the circumstances, no officer could reasonably infer from those observations that Appellant was engaged in criminal activity. Appellant's Brief at 11-18.

In Pennsylvania, there are three categories of interaction between the police and members of the public: 1) mere encounters, which are characterized by the fact that the suspect has no official compulsion to stop or respond to the police, and which need not be supported by any level of suspicion; 2) investigative detentions, in which suspects are required to stop and submit to a period of detention, but are not subject to such coercive conditions to qualify as an arrest, and which must be supported by reasonable suspicion; and 3) arrests, or custodial detentions, which must be supported by probable cause. *Commonwealth v. Astillero,* 39 A.3d 353, 357-358 (Pa. Super. 2012).

> To determine whether a mere encounter rises to the level of an investigatory detention, we must discern whether, as a matter of law, the police conducted a seizure of the person involved. To decide whether a seizure has occurred, a court must consider all the circumstances surrounding the encounter to determine whether the demeanor and conduct of the police would have communicated to a reasonable person that he or she was not free to decline the officer's request or otherwise terminate the encounter. Thus, the focal point of our inquiry must be whether, considering the circumstances surrounding the incident, a reasonable person innocent of any crime would have thought he was being restrained had he been in the defendant's shoes.

*Commonwealth v. Collins*, 950 A.2d 1041, 1046-1047 (Pa. Super. 2008) *quoting* *Commonwealth v. Reppert*, 814 A.2d at 1201–1202. *See also*

*Commonwealth v. Mendenhall*, 715 A.2d 1117, 1119 (Pa. 1998) ("in addressing whether an investigative 'stop' occurred ... the pivotal inquiry is whether, considering all the facts and circumstances evidencing the exercise of force, a reasonable man would have thought he was being restrained").

Officer Kennedy testified regarding his interaction with Appellant as follows:

> [W]e were operating an unmarked vehicle and we were in plainclothes. We approached Kennedy Avenue. ... I observed three males standing on the corner of Perrysville and Kennedy in front of a building which would be 2821 Perrysville Avenue. I turned right onto Kennedy Avenue and slowed down by these three males that were standing in front of the buildings at which time [Appellant] grabbed his waistband with both hands and tried to conceal himself behind one of the other males.
>
> ***
>
> Initially when we first went by he kind of crouched down, bent down trying to conceal himself at which time I illuminated him with my portable flashlight and I began to identify myself as Pittsburgh police. He backed up from the male he was trying to conceal himself behind, took a few steps back. He motioned and began to pull up on his waistband ... and he started looking around and fled towards [an] opening between 2821 Perrysville and 2813.
>
> ***
>
> [H]e began to flee toward that opening. Before he was at the corner, before we took the corner, I saw him pull out of his right hand which now contained the firearm .... [before] he turned that corner, that's whenever he brandished the firearm, he fled around the corner.

N.T., 5/28/13, at 8-9.

Officer Kennedy testified that the area of Perrysville and Kennedy is a high crime area in which he has made "dozens and dozens" of arrests. *Id*.,

at 9-10. He further testified that Appellant's furtive movements led him to believe that Appellant might be armed with a weapon, and that Appellant fled when the officer, from his unmarked vehicle, illuminated Appellant with the flashlight and began to say "Pittsburgh Police." *Id*. at 10-11. Appellant was pursued by Officers Stroschein and Pacheco, who took Appellant into custody and directed Appellant to an area behind 2811 Perrysville, where Officer Kennedy retrieved a Highpoint 9-millimeter firearm with five rounds in the magazine and one round in the chamber, and two bundles of heroin. *Id*. at 12.

This testimony was corroborated by Officer Stroschein, who testified that he was in the police car with Officers Love, Pacheco and Kennedy, driving inbound on Perrysville Avenue when they saw Appellant bend down and attempt to conceal himself behind the two other people he was with. *Id*. at 21. The officer turned right onto Kennedy, and drove alongside the group, at which time Appellant reached for his waistband and began to flee. *Id*. at 22. Detective Kennedy testified that when Appellant fled, he pursued Appellant and observed him holding a black firearm in his right hand, which he discarded behind 2811 Perrysville along with two white rectangular objects. *Id*. at 19-30.

The trial court concluded that, under the totality of the circumstances, Officer Kennedy's interaction with Appellant constituted an investigative

detention that was supported by reasonable suspicion. The trial court explained:

> In this case, there was ample reasonable suspicion to conduct a stop because it was at night in a high-crime area, and the officers observed [Appellant's] unusual behavior as he attempted to conceal himself behind his companions. The officers also observed [Appellant] in possession of what they believed was a handgun in his waistband. At that point, it was appropriate for the officers to stop [Appellant] and investigate. ... Once the police lawfully ordered [Appellant] to stop, he ran and discarded his gun and drugs. As such, the contraband discarded by [Appellant] was voluntarily abandoned. ... Therefore, there was no error in denying suppression this matter.

Trial Court Opinion, 4/23/14, at 2-3 (citations omitted).

Upon review, we find that the police officers' initial interaction with Appellant at the street corner constituted a mere encounter that escalated into an investigative detention when the officers pursued Appellant after he fled.

"To determine whether a mere encounter rises to the level of an investigatory detention, we must discern whether, as a matter of law, the police conducted a seizure of the person involved." **Collins**, 950 A.2d at 1046-1047. "To guide the crucial inquiry as to whether or not a seizure has been effected, the United States Supreme Court has devised an objective test entailing a determination of whether, in view of all surrounding circumstances, a reasonable person would have believed that he was free to leave. In evaluating the circumstances, the focus is directed toward whether, by means of physical force or show of authority, the citizen-

subject's movement has in some way been restrained. In making this determination, courts must apply the totality-of-the-circumstances approach, with no single factor dictating the ultimate conclusion as to whether a seizure has occurred." *Commonwealth v. Strickler*, 757 A.2d 884, 889–90 (Pa. 2000) (internal citations and footnotes omitted). "Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might by compelled." *Commonwealth v. McClease*, 750 A.2d 320, 324–25 (Pa. Super. 2000) *quoting* *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980)).

"[T]he Pennsylvania Supreme Court and the United States Supreme Court have repeatedly held a seizure does not occur where officers merely approach a person in public and question the individual or request to see identification." *Commonwealth v. Lyles*, 97 A.3d 598, 303 (Pa. 2014). *See also Commonwealth v. Coleman*, 19 A.3d 1111, 1116 (Pa. Super. 2011) ("the approach of a police officer followed by questioning does not constitute a seizure"). Here, when the officers observed Appellant on the street corner making furtive movements, the officers were free to approach Appellant and identify themselves as police officers, and such interaction,

where the officers drove alongside Appellant, shone a flashlight, and announced themselves as police, did not rise to the level of a seizure. There is no evidence that when the officers approached Appellant, they made any show of physical force or display of authority. No weapons were drawn, and Appellant was not precluded from leaving. The officers neither restrained Appellant nor instructed him that he was not free to leave. Accordingly, the officers' initial interaction with Appellant, where they simply drove alongside Appellant, and without exiting their vehicle, illuminated him with a flashlight and identified themselves as police, required no level of suspicion to be constitutionally valid. *See Commonwealth v. Riley*, 715 A.2d 1131, 1134, (Pa. Super. 1998) (where the police pulled up along the sidewalk in an unmarked car and then exited the vehicle in order to approach the appellant and those with him, the mere approach by a law enforcement official did not need to be supported by any level of suspicion, and carried no official compulsion on the part of the citizen to stop or to respond); *Lyles*, 97 A.3d at 305-306 (where an officer sees men sitting at a vacant building, there is no impropriety in the officer's approaching the men, nor in asking their reason for loitering there, and the officer's request for identification does not elevate the interaction from a mere encounter to an investigative detention); *Coleman*, 19 A.3d at 1116 (where police officer approached the appellant and asked him if he had a gun, that interaction constituted a mere encounter that required no level of suspicion to be constitutionally valid);

*Commonwealth v. Guess*, 53 A.3d 895 (Pa. Super. 2012) (where police officer approached defendant without making any verbal command for defendant to stop and without impeding his movement, but merely identified himself and asked if defendant was willing to speak with him, a reasonable person would have felt free to terminate the encounter during the initial approach and questioning).

When Appellant fled, however, and the officers pursued and subsequently arrested him, the encounter escalated into a seizure. *See Commonwealth v. Cottman*, 764 A.2d 595, 599 (Pa. Super. 2000) (where police officer approached three individuals in a parked car and asked if he could speak to them, and the appellant took flight, the officer's pursuit of appellant constituted a seizure). We conclude that the officers' pursuit of Appellant was supported by reasonable suspicion, and Appellant's arrest was supported by probable cause, given the totality of the following circumstances: Appellant's presence in a high crime area, together with his furtive movements and efforts to conceal himself, his immediate flight when approached by police, and the officers' observations of Appellant carrying a handgun while he fled from officers. *See Cottman*, 764 A.2d at 599-600 (given the appellant's presence in a high crime area, furtive movement to conceal an object when seen by police and subsequent flight, specific and articulable facts existed to substantiate a finding of reasonable suspicion to pursue him). This reasonable suspicion was further supported by Appellant's

subsequent actions in displaying the handgun, which he then discarded along with packets of contraband during his flight.

We additionally note that, to the extent Appellant seeks to suppress the handgun and the drugs, our Supreme Court has explained that "[i]n order to prevail on a [suppression] motion, ... a defendant is required to separately demonstrate a personal privacy interest in the area searched or effects seized, and that such interest was 'actual, societally sanctioned as reasonable, and justifiable.' Such a legitimate expectation of privacy is absent where an owner or possessor meaningfully abdicates his control, ownership or possessory interest." *Commonwealth v. Hawkins*, 718 A.2d 265, 267 (Pa. 1998) (citations and footnote omitted). Here, Appellant abandoned any personal privacy interest in the gun and drugs upon discarding them during his flight from the police. Because Appellant's flight and the abandonment was not coerced by any illegal police conduct, Appellant has no standing to contest the search and seizure of items which he voluntarily abandoned. *See Commonwealth v. Riley*, 715 A.2d 1131, 1134 (Pa. Super. 1998).

In his second issue, Appellant argues that the Commonwealth failed to produce sufficient evidence to prove beyond a reasonable doubt that he possessed heroin with intent to deliver.

> Our standard when reviewing the sufficiency of the evidence is whether the evidence at trial, and all reasonable inferences derived therefrom, when viewed in the light most favorable to the Commonwealth as verdict-winner, are sufficient to establish

- 11 -

all elements of the offense beyond a reasonable doubt. We may not weigh the evidence or substitute our judgment for that of the fact-finder. Additionally, the evidence at trial need not preclude every possibility of innocence, and the fact-finder is free to resolve any doubts regarding a defendant's guilt unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. When evaluating the credibility and weight of the evidence, the fact-finder is free to believe all, part or none of the evidence. For purposes of our review under these principles, we must review the entire record and consider all of the evidence introduced.

*Commonwealth v. Emler*, 903 A.2d 1273, 1276–77 (Pa. Super. 2006).

At trial, Officers Kennedy, Stroschein and Pacheco testified that they saw Appellant in possession of a handgun, and that they observed him discard two packets of contraband, which were later recovered and determined to contain heroin. N.T., 5/31/13, at 28-68. Officer Kennedy additionally testified that results from the police crime lab indicated that the gun was a Hi-Point pistol in good operating condition, and that the contraband was heroin packed in "two stacks [of] five rubber banded bundles each holding ten paper packets ... one stack had 50 packets that contained ... heroin weighing 1.23 grams [and] the other rubber band bundle [contained] 50 packets [of] heroin [weighing] 1.38 grams," for a total of 2.61 grams of heroin. *Id*. at 36-37.

The Commonwealth also presented the expert testimony of Detective Mark Goob of the City of Pittsburgh Police Department, who testified that he believed Appellant possessed the heroin with an intent to deliver. In reaching his determination, Detective Goob explained that in his experience,

drug dealers often carry loaded guns to protect their proceeds, and that it is uncommon for drug users to carry loaded weapons. *Id*. at 80-83. Detective Goob additionally noted that the 100 "stamp bags" of heroin had a retail value of $1,000, and further opined that the fact there were 100 bags (rather than 99 or 98 bags) indicated that Appellant had recently purchased them and not sold any yet, given that heroin is commonly sold in bundles of ten "stamp bags." *Id*., at 83-92. The officer further testified that drug dealers commonly take the money from their last drug sale and use it to purchase more drugs, and that the 100 stamp bags found on Appellant together with the fact that Appellant had very little cash on him indicated that he had recently purchased the heroin. *Id*. Moreover, Detective Goob testified that the fact that Appellant was not found carrying any paraphernalia for using the heroin, indicated that he did not possess it for personal consumption. *Id.* at 83-84. The detective stated that in his experience, it was common for drug dealers to be "alert", "on their toes", and "watching out for police", while drug users are more "sluggish" in their behavior, and Appellant's immediate flight further suggested that he was a drug dealer. *Id*. at 83-85. Detective Goob opined that since Appellant was unemployed, it was unlikely that he would be able to afford $1,000 worth of heroin without selling at least a portion of it to offset the cost. *Id*. at 86.

The foregoing testimony, if believed by the jury, was sufficient to support a determination that Appellant possessed the heroin with the intent

to deliver it. ***In re T.B.***, 11 A.3d 500, 504 (Pa. Super. 2010) ("[I]t is the province of the trier of fact to pass upon the credibility of witnesses and the weight to be accorded the evidence produced. The factfinder is free to believe all, part or none of the evidence. The facts and circumstances established by the Commonwealth need not be absolutely incompatible with the defendant's innocence, but the question of any doubt is for the [factfinder] unless the evidence be so weak and inconclusive that as a matter of law no probability of fact can be drawn from the combined circumstances.").

For the foregoing reasons, we affirm the judgment of sentence.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/24/2014

- 14 -