J-A14027-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| ALHAJI BAKARIE SARR-DAFFEE | |
| Appellant | No. 1851 MDA 2014 |

Appeal from the Judgment of Sentence August 21, 2014
In the Court of Common Pleas of Berks County
Criminal Division at No(s): CP-06-CR-0004420-2013

BEFORE:  BENDER, P.J.E., JENKINS, J., and STRASSBURGER, J.[*]

MEMORANDUM BY JENKINS, J.:                    **FILED MAY 22, 2015**

Appellant Alhaji Bakarie Sarr-Daffee appeals from the judgment of sentence entered in the Berks County Court of Common Pleas following his jury trial convictions for robbery,[1] theft by unlawful taking or disposition,[2] receiving stolen property,[3] resisting arrest or other law enforcement,[4] and false identification to law enforcement authorities.[5]  We affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 3701(a)(1)(ii), and (vi).

[2] 18 Pa.C.S. § 3921(a).

[3] 18 Pa.C.S. § 3925(a).

[4] 18 Pa.C.S. § 5104.

[5] 18 Pa.C.S. § 4914.

The relevant facts and procedural history of this appeal are as follows. On August 21, 2013, at approximately 2:00 p.m., Appellant entered the Riverfront Federal Credit Union bank, located on South 4th Street in Reading, Pennsylvania. N.T., 3/7/14, at 4-5. Appellant approached pregnant bank teller Samantha Dix and handed her a note that demanded she give him "all the money" because he had a gun. *Id.* at 5-6. Dix gave Appellant the contents of her register, later determined to be $2,200.00. *Id.* at 7, 21. Appellant asked Dix if that was all of the money, Dix told Appellant that it was, and Appellant left the bank. *Id.* at 7. Dix then pressed the panic button to alert police of the robbery. *Id.* at 8.

Officer Wilfredo Ramirez of the City of Reading Police Department responded to the radio call and arrived at the bank approximately one-to-two minutes after Dix pushed the panic button. N.T., 3/7/14, at 34-36. Dix provided the following description of Appellant: a dark-skinned black male with "craters on his face" wearing a dark sweater, polarized sunglasses, and a dark colored baseball hat with white lettering. *Id.* at 37-38, 59. On his way to the bank, Officer Ramirez had noticed a black male wearing a dark colored baseball hat with white lettering, about a block away from the bank. *Id.* at 38. He left the bank to search for Appellant and broadcasted over the police radio that he had seen a black male who fit Appellant's description walking north on Wood Street. *Id.* at 39.

Officer James Thomas reported to the area, having heard Officer Ramirez's broadcast and the description of Appellant as a "black male, dark

- 2 -

skinned" with "craters on his face." *Id.* at 59. While he was driving to the area in his patrol car, Officer Thomas noticed a black male walking north on 5th Street. *Id.* at 60. The male, later identified as Appellant, turned and looked at Officer Thomas about four or five times as the officer sat in his patrol car waiting for a stoplight to turn green. *Id.* Just as Officer Thomas was about to pass Appellant, Appellant turned abruptly and began to walk south on 5th Street. *Id.* Officer Thomas turned his vehicle around and parked about 20 feet behind Appellant, who was still walking quickly. *Id.* at 61. Officer Thomas followed Appellant and said, "Excuse me, can I talk to you?" *Id.* When Appellant turned toward Officer Thomas to respond, Officer Thomas noticed bumps on Appellant's face and neck. *Id.* Appellant told Officer Thomas that he did not want to talk to him and proceeded to walk quickly away from him. *Id.*

Officer Thomas continued to follow Appellant and verbally attempted to get him to stop to talk with him regarding a bank robbery. *Id.* at 62. Appellant again stated that he did not want to speak with the officer and continued to walk away. *Id.* When Officer Thomas caught up to Appellant, Appellant started to run. *Id.* Officer Thomas then tried to grab Appellant's arm to stop him, but Appellant pushed the officer away and refused orders to stop and get on the ground. *Id.* at 64. Eventually, four or five officers managed to stop Appellant. *Id.*

Police detained Appellant until Dix arrived to identify him. N.T., 3/7/14, at 72, 90. Dix could not immediately identify Appellant, so the

police moved him closer so that he was within a few feet from her. *Id.* at 90-91. Dix noted that Appellant was no longer wearing black clothing, a hat or sunglasses. *Id.* at 90. After she "had him put the sunglasses on,"[6] Dix made a positive identification of Appellant, noting that he appeared to have the same acne as the person who robbed her. *Id.* at 11, 91. The identification took place approximately twenty minutes after the initial radio broadcast of Appellant's description.[7] *Id.* at 72.

After Dix identified Appellant, Officer Ramirez searched Appellant for weapons and found $2,200.00 in his pocket. *Id.* at 44.

On February 7, 2014, Appellant filed an omnibus pretrial motion, which included a motion to suppress evidence and a motion to suppress out-of-court identification. On May 14, 2014, after a hearing on May 7, 2014, the court denied Appellant's motion. Additionally, on July 2, 2014, Appellant

---

[6] After Dix pointed out that Appellant was not wearing sunglasses, as he had been during the robbery, police officers placed a pair of sunglasses on Appellant. N.T., 3/7/14, at 11. The sunglasses belonged to Officer Ryan Smith, who helped apprehend Appellant. *Id.* at 96-98. The sunglasses were broken during the apprehension and laying on the sidewalk when other officers placed them on Appellant. *Id.* at 98. Officer Smith was nearby on the sidewalk with a group of officers during the identification when he realized that his sunglasses were not in his pocket but on Appellant's face. *Id.*

[7] Dix identified Appellant again at the omnibus pretrial hearing on March 7, 2014 and based her identification on her memory of seeing him at her bank teller window. N.T., 3/7/14, at 19.

filed a motion for release pursuant to Pa.R.Crim.P. 600, which the court denied on July 15, 2014.

On July 17, 2014, a jury convicted Appellant of the aforementioned charges. On August 29, 2014, the court sentenced him to 6-15 years' imprisonment for robbery and 1-2 years' imprisonment, consecutive, for resisting arrest or other law enforcement.[8] On September 2, 2014, Appellant timely filed post-sentence motions, which the court denied on October 7, 2014, after conducting a hearing on October 3, 2014. On November 3, 2014, Appellant filed a notice of appeal. The same day, the court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and he timely complied on November 20, 2014.

Appellant raises the following issues for our review.

> 1. DID THE TRIAL COURT ERR IN DENYING APPELLANT'S MOTION TO SUPPRESS PHYSICAL EVIDENCE AS: (A) THERE WAS AN INSUFFICIENT DESCRIPTION OF THE ASSAILANT TO SUPPORT REASONABLE SUSPICION/PROBABLE CAUSE JUSTIFYING AN INVESTIGATIVE DETENTION/ARREST OF ANY PERSON LET ALONE APPELLANT AND/OR (B) THE APPELLANT DID NOT SUFFICIENTLY MATCH THE DESCRIPTION OF THE ASSAILANT THAT WAS PROVIDED SO AS TO SUPPORT REASONABLE SUSPICION/PROBABLE CAUSE JUSTIFYING HIS INVESTIGATIVE DETENTION/ARREST?

---

[8] The trial court imposed no further penalties on Appellant's remaining convictions and granted him 365 days credit for time served.

2. DID THE TRIAL COURT ERR IN DENYING APPELLANT['’]S MOTION TO SUPPRESS THE OUT OF COURT IDENTIFICATION OF THE APPELLANT MADE BY SAMANTHA DIX AS THE IDENTIFICATION WAS MADE BASED ON A PAIR OF SUNGLASSES THAT ACTUALLY BELONGED TO A POLICE OFFICER WHO PLACED THEM ON THE APPELLANT WHO WAS CLEARLY IN POLICE CUSTODY DURING A SHOW-UP AS WELL AS ANY IN COURT IDENTIFICATION AS SUCH WAS TAINTED BY THE SAID OVERLY SUGGESTIVE OUT-OF-COURT IDENTIFICATION?

3. DID THE TRIAL COURT [ERR] IN DENYING APPELLANT'S RULE 600 FOR RELEASE ON NOMINAL BAIL AS 180 DAYS NOT ATTRIBUTABLE TO THE APPELLANT HAD ELAPSED SINCE THE FILING OF THE CRIMINAL COMPLAINT PRIOR TO TRIAL AND THIS ISSUE IS ONE CAPABLE OF REPETITION AND LIKELY TO EVADE REVIEW?

Appellant's Brief at 10-11.

In his first issue, Appellant challenges the court's denial of his motion to suppress evidence. Appellant argues the police did not have reasonable suspicion or probable cause to warrant an investigative detention of his person. He claims the description upon which the police acted was vague and generic, and that it did not fit Appellant's description when they apprehended him. Appellant concludes that the seizure of his person was unconstitutional, and that any evidence flowing from that seizure, including the cash seized from his person and the out-of-court identification must be suppressed. We disagree.

Our standard of review for a trial court's denial of a suppression motion is as follows:

In addressing a challenge to a trial court's denial of a suppression motion we are limited to determining whether

the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Since the Commonwealth prevailed in the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the trial court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

*Commonwealth v. Cauley*, 10 A.3d 321, 325 (Pa.Super.2010) (quoting *Commonwealth v. Bomar*, 826 A.2d 831, 842 (Pa.2003)). "Our standard of review is restricted to establishing whether the record supports the suppression court's factual findings; however, we maintain *de novo* review over the suppression court's legal conclusions." *Commonwealth v. Guzman*, 44 A.3d 688, 692 (Pa.Super.2012) (citation omitted).

Pennsylvania recognizes three types of interactions between police officers and citizens. *Commonwealth v. Stevenson*, 832 A.2d 1123, 1126-27, (Pa.Super.2003). "Interaction between citizens and police officers, under search and seizure law, is varied and requires different levels of justification depending upon the nature of the interaction and whether or not the citizen is detained." *Id.*

The first category, a mere encounter or request for information, does not need to be supported by any level of suspicion, and does not carry any official compulsion to stop or respond. The second category, an investigative detention, derives from *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) and its progeny: such a detention is lawful if supported by reasonable suspicion because, although it subjects a suspect to a stop and a period of detention, it does not involve such coercive

- 7 -

conditions as to constitute the functional equivalent of an arrest. The final category, the arrest or custodial detention, must be supported by probable cause.

***Commonwealth v. Gonzalez***, 979 A.2d 879, 884 (Pa.Super.2009) (quoting

***Commonwealth v. Moyer***, 954 A.2d 659, 663 (Pa.Super.2008) (*en banc*)

(quoting ***Commonwealth v. Smith***, 836 A.2d 5, 10 (Pa.2003))).

> A "mere encounter" can be any formal or informal interaction between an officer and a citizen, but will normally be an inquiry by the officer of a citizen. The hallmark of this interaction is that it carries no official compulsion to stop or respond.
>
> In contrast, an "investigative detention," by implication, carries an official compulsion to stop and respond, but the detention is temporary, unless it results in the formation of probable cause for arrest, and does not possess the coercive conditions consistent with a formal arrest. Since this interaction has elements of official compulsion it requires "reasonable suspicion" of unlawful activity. In further contrast, a custodial detention occurs when the nature, duration and conditions of an investigative detention become so coercive as to be, practically speaking, the functional equivalent of an arrest.

***Stevenson***, 832 A.2d at 1127-29.

We analyze whether a "mere encounter" has risen to the level of an "investigative detention" under the following standard:

> To guide the crucial inquiry as to whether or not a seizure has been effected, the United States Supreme Court has devised an objective test entailing a determination of whether, in view of all surrounding circumstances, a reasonable person would have believed that he was free to leave. In evaluating the circumstances, the focus is directed toward whether, by means of physical force or show of authority, the citizen-subject's movement has in some way been restrained. In making this determination, courts must apply the totality-of-the-circumstances

approach, with no single factor dictating the ultimate conclusion as to whether a seizure has occurred.

*Commonwealth v. Downey*, 39 A.3d 401, 405 (Pa.Super.2012), *appeal denied*, 50 A.3d 124 (Pa.2012) (quoting *Commonwealth v. Coleman*, 19 A.3d 1111, 1116 (Pa.Super.2011)).

"Police must have reasonable suspicion that a person seized is engaged in unlawful activity before subjecting that person to an investigative detention." *Commonwealth v. Goldsborough*, 31 A.3d 299, 306 (Pa.Super.2011), *appeal denied*, 49 A.3d 442 (Pa.2012) (quoting *Commonwealth v. Cottman*, 764 A.2d 595 (Pa.Super.2000)).

> Reasonable suspicion exists only where the officer is able to articulate specific observations which, in conjunction with reasonable inferences derived from those observations, led him reasonably to conclude, in light of his experience, that criminal activity was afoot and that the person he stopped was involved in that activity. Therefore, the fundamental inquiry of a reviewing court must be an objective one, namely, whether the facts available to the officer at the moment of intrusion warrant a [person] of reasonable caution in the belief that the action taken was appropriate.

*Id.* (quoting *Commonwealth v. Jones*, 874 A.2d 108, 116 (Pa.Super.2005) (internal citations and quotation marks omitted)).

Police must have probable cause that a person is engaged in criminal activity before subjecting that person to an arrest or "custodial detention." *Goldsborough*, 31 A.3d at 306.

> Probable cause is made out when the facts and circumstances which are within the knowledge of the officer at the time of the arrest, and of which he has

reasonably trustworthy information, are sufficient to warrant a [person] of reasonable caution in the belief that the suspect has committed or is committing a crime. The question we ask is not whether the officer's belief was correct or more likely true than false. Rather, we require **only a probability,** and not a *prima facie* showing, of criminal activity. In determining whether probable cause exists, we apply a totality of the circumstances test.

*Id.* (quoting *Commonwealth v. Williams,* 2 A.3d 611 (Pa.Super.2010) (*en banc*), *appeal denied*, 19 A.3d 1051 (Pa.2011)) (internal citations and quotation marks omitted) (emphasis in original).

The key difference between an investigative detention and a custodial one is that the latter involves such coercive conditions as to constitute the functional equivalent of an arrest. In determining whether an encounter with the police is custodial, the standard is an objective one, with due consideration given to the reasonable impression conveyed to the person interrogated rather than the strictly subjective view of the troopers or the person being seized and must be determined with reference to the totality of the circumstances.

*Commonwealth v. Pakacki*, 901 A.2d 983, 987-88 (Pa.2006) (internal citations omitted).

The court considers the totality of the circumstances to determine if an encounter is investigatory or custodial, but the following factors are specifically considered: the basis for the detention; the duration; the location; whether the suspect was transported against his will, how far, and why; whether restraints were used; the show, threat or use of force; and the methods of investigation used to confirm or dispel suspicions.

*Goldsborough, supra* at 306 (quoting *Commonwealth v. Teeter,* 961 A.2d 890, 899 (Pa.Super.2008)).

Instantly, the interaction between Officer Thomas and Appellant began as a mere encounter. Officer Thomas was operating his police vehicle and looking for a bank robber who matched the description of a dark-skinned black male with "craters" on his face wearing certain articles of clothing when he saw Appellant. He noticed Appellant glance at him four or five times while he was stopped at a red light. Officer Thomas then noticed Appellant abruptly turn around when he drove his police vehicle beside him. Officer Thomas got out of his police vehicle and called out to Appellant, requesting to speak with him. When Officer Thomas asked Appellant to speak with him, a reasonable person would have felt free to leave, as Appellant obviously did because he told the officer that he did not wish to speak with him and continued to walk away. ***See Downey, supra.*** The level of interaction was therefore a mere encounter, and Officer Thomas did not need any suspicion to make a request for information. ***See Gonzalez, supra.***

When Appellant turned around and said that he did not wish to speak, Officer Thomas observed the bumps on Appellant's face. At this point, Officer Thomas obtained reasonable suspicion to subject Appellant to an investigative detention. Officer Thomas observed Appellant within blocks of the bank where a robbery had occurred only minutes earlier. Although Appellant was not wearing the same hat, sunglasses, or jacket, he was a dark-skinned black male with severe acne on his face and neck, matching

key components of the description radioed to Officer Thomas. These facts, along with Appellant's nervous behavior, furnished reasonable suspicion that Appellant was the bank robber and authorized Officer Thomas to detain him for further investigation. *See Goldsborough, supra.* The police properly detained Appellant for less than twenty minutes, without transporting him to another area, while awaiting Dix's arrival for identification purposes. *See Goldsborough, supra.*

When Dix identified Appellant, the police had probable cause to arrest him. Upon patting him down for weapons, the police discovered the money in Appellant's pocket. Because the record supports the trial court's factual findings, and the legal conclusions drawn from those facts are correct, we hold that the court properly denied Appellant's suppression motion.

In his second issue, Appellant argues Dix made the out-of-court identification under suggestive and tainted circumstances. He claims that Dix's identification of him was not reliable because police transported Dix to him while he was surrounded by police officers. Additionally, Appellant contends that because police officers placed sunglasses on him to aid Dix in identification, the admission of Dix's out-of-court identification into evidence violated his due process rights. Further, Appellant contends that the subsequent in-court identification was tainted by the out-of-court identification and should also be suppressed. Again, we disagree.

> In reviewing the propriety of identification evidence, the central inquiry is whether, under the totality of the

- 12 -

circumstances, the identification was reliable. The purpose of a "one on one" identification is to enhance reliability by reducing the time elapsed after the commission of the crime. Suggestiveness in the identification process is but one factor to be considered in determining the admissibility of such evidence and will not warrant exclusion absent other factors. As this Court has explained, the following factors are to be considered in determining the propriety of admitting identification evidence: the opportunity of the witness to view the perpetrator at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the perpetrator, the level of certainty demonstrated at the confrontation, and the time between the crime and confrontation. The corrupting effect of the suggestive identification, if any, must be weighed against these factors. Absent some special element of unfairness, a prompt "one on one" identification is not so suggestive as to give rise to an irreparable likelihood of misidentification.

***Commonwealth v. Kearney***, 92 A.3d 51, 65 (Pa.Super.2014), *appeal denied*, 101 A.3d 102 (Pa.2014).

Here, Dix viewed Appellant from the bank window when he committed the robbery. He was standing only feet away from her while she gathered the money in her register and while she assured him that it was all of the money. The encounter was brief, but she was very alert because she feared for her life and the life of her unborn child. Less than twenty minutes later, she identified Appellant on the street. Concededly, Dix identified Appellant while he was in police custody and after she asked the police to put sunglasses on him, which she admitted made it easier for her to identify him. Nevertheless, she made the identification based on Appellant's facial features that she could see at the time of the robbery, especially his acne.

Upon viewing Appellant again, in close proximity, Dix was certain that Appellant was the man who robbed her. Any corrupting effect of the sunglasses and the police presence is outweighed by the other indicia of reliability. Further, Dix testified that her subsequent in-court identification was based on her memory of Appellant when he robbed the bank.

After considering the factors, the trial court reasoned:

> [B]ased on these factors, [Dix's] identification of [Appellant] at the out-of court identification is reliable. In addition, even if the pretrial identification procedures contained some element of suggestiveness, this [c]ourt finds the circumstances surrounding the encounter provided an independent basis for [Dix's] subsequent in[-] court identifications of [Appellant.]

Trial Court Opinion, filed December 2, 2014, at 14. The trial court's findings are supported by the record and its legal conclusions are correct.

In his third issue, Appellant argues the court erred by denying his Rule 600 motion. Appellant claims the trial court miscalculated the delay period by 18 days, and that his actual delay period of 186 days entitled him to nominal bail because it was six days past the period for a speedy trial, pursuant to Pa.R.Crim.P. 600. This issue merits no relief.

Rule 600 provides, in pertinent part:

**Rule 600. Prompt Trial**

\* \* \*

(B) Pretrial Incarceration

Except in cases in which the defendant is not entitled to release on bail as provided by law, no defendant shall be held in pretrial incarceration in excess of

(1) 180 days from the date on which the complaint is filed;

\* \* \*

(C) Computation of Time

\* \* \*

(2) For purposes of paragraph (B), only periods of delay caused by the defendant shall be excluded from the computation of the length of time of any pretrial incarceration. Any other periods of delay shall be included in the computation.

(3)(a) When a judge or issuing authority grants or denies a continuance:

(i) the issuing authority shall record the identity of the party requesting the continuance and the reasons for granting or denying the continuance; and

(ii) the judge shall record the identity of the party requesting the continuance and the reasons for granting or denying the continuance. The judge also shall record to which party the period of delay caused by the continuance shall be attributed, and whether the time will be included in or excluded from the computation of the time within which trial must commence in accordance with this rule.

\* \* \*

(D) Remedies

\* \* \*

(2) Except in cases in which the defendant is not entitled to release on bail as provided by law, when a defendant is held in pretrial incarceration beyond the time set forth in paragraph (B), at any time before trial, the defendant's

- 15 -

attorney, or the defendant if unrepresented, may file a written motion requesting that the defendant be released immediately on nominal bail subject to any nonmonetary conditions of bail imposed by the court as permitted by law. A copy of the motion shall be served on the attorney for the Commonwealth concurrently with filing. The judge shall conduct a hearing on the motion.

Pa.R.Crim.P. 600.

In evaluating Rule 600 issues, we recognize the following principles:

In evaluating Rule 600 issues, our standard of review of a trial court's decision is whether the trial court abused its discretion. Judicial discretion requires action in conformity with law, upon facts and circumstances judicially before the court, after hearing and due consideration. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused.

The proper scope of review…is limited to the evidence on the record of the Rule 600 evidentiary hearing, and the findings of the trial court. An appellate court must view the facts in the light most favorable to the prevailing party.

Additionally, when considering the trial court's ruling, this Court is not permitted to ignore the dual purpose behind Rule 600. Rule 600 serves two equally important functions: (1) the protection of the accused's speedy trial rights, and (2) the protection of society. In determining whether an accused's right to a speedy trial has been violated, consideration must be given to society's right to effective prosecution of criminal cases, both to restrain those guilty of crime and to deter those contemplating it. However, the administrative mandate of Rule 600 was not designed to insulate the criminally accused from good faith prosecution delayed through no fault of the Commonwealth.

So long as there has been no misconduct on the part of the Commonwealth in an effort to evade the fundamental

> speedy trial rights of an accused, Rule 600 must be construed in a manner consistent with society's right to punish and deter crime. In considering these matters…, courts must carefully factor into the ultimate equation not only the prerogatives of the individual accused, but the collective right of the community to vigorous law enforcement as well.

*Commonwealth v. Tickel*, 2 A.3d 1229, 1233 (Pa.Super.2010), *appeal denied*, 23 A.3d 541 (Pa.2011) (internal citations omitted).

Appellant concedes that all of the trial court's time calculations are correct except for the continuance from December 19, 2013 to January 7, 2014. **See** Appellant's Brief at 37. Appellant's counsel requested a continuance to review discovery on these dates. Although Appellant contends he only requested the continuance because the Commonwealth failed to produce discovery before December 18, 2013, this time period is still attributable to Appellant because he requested the continuance. We see no misconduct on the part of the Commonwealth in an effort to evade Appellant's fundamental speedy trial rights. **See Tickel, supra.** Thus, the trial court did not abuse its discretion in denying Appellant's Rule 600 motion for release on nominal bail.[9]

---

[9] Further, because the court granted Appellant credit for all time served, including the six days Appellant alleges were improper, this issue is moot. **See Commonwealth v. Sloan**, 907 A.2d 460, 465 (Pa.2006) ("[g]enerally, a case will be dismissed if at any stage of the judicial process it is rendered moot.").

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/22/2015