J-S28011-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                           :            PENNSYLVANIA
                                           :
               v.                            :
                                           :
                                           :
WILLIAM ALBERTO DELIZ, JR.       :
                                           :
              Appellant             :    No. 1900 MDA 2018

Appeal from the Judgment of Sentence Entered June 18, 2018
In the Court of Common Pleas of Berks County Criminal Division at
No(s): CP-06-CR-0002965-2017

BEFORE:   BOWES, J., McLAUGHLIN, J., and STRASSBURGER*, J.

MEMORANDUM BY BOWES, J.:               **FILED AUGUST 14, 2019**

William Alberto Deliz, Jr. appeals from the judgment of sentence of thirty months to eight years of imprisonment followed by two years of probation. Sentence was imposed after he was convicted of one count of possession with the intent to distribute ("PWID") (cocaine), two counts of possession (cocaine and fentanyl), and one count each of possession of drug paraphernalia and firearms not to be carried without a license. Appellant challenges the trial court's denial of his motion to suppress. After thorough review, we affirm.

The facts giving rise to the charges are gleaned from the record of the suppression hearing. On February 24, 2017, at approximately 10:50 a.m., Pennsylvania State Trooper Justin Hope was patrolling the Pennsylvania Turnpike in the eastbound direction in Caernarvon Township, Berks County, when he observed Appellant driving a newly-registered black Honda with "very

_____
*   Retired Senior Judge assigned to the Superior Court.

dark" tinted windows. Trooper Hope ran the license plate on the vehicle and discovered it was registered to a woman. Trooper Hope activated his lights and sirens to signal to Appellant that he should pull over. Appellant initially stopped his vehicle just short of the pullover area in a location the trooper deemed to be unsafe. Trooper Hope, a sixteen-year veteran of the State Police with experience in drug interdiction, identified this immediate stop in an unsafe area as a tactic used to speed up traffic stops and deter troopers from doing a thorough search of a vehicle. When Trooper Hope signaled for Appellant to move the vehicle into the pullover area, Appellant complied.

Dash camera video documented the stop. Trooper Hope approached Appellant's vehicle and advised that he had stopped him due to the heavily tinted windows. Although the windows were too dark, the trooper informed Appellant that he was only going to write him a warning. He asked Appellant to identify the owner of the vehicle and Appellant replied that the vehicle belonged to his sister. Appellant complied with the trooper's request for his license, vehicle registration, and insurance. As Appellant handed over the documentation, Trooper Hope noticed that Appellant's hand was visibly shaking. Appellant's nervousness prompted the trooper to inquire where Appellant was going, and Appellant replied that he was on the way to the King of Prussia Mall to meet a friend for lunch at the Cheesecake Factory, and denied that he had plans to shop. While standing adjacent to the car, Trooper Hope observed that there were two cell phones in the cup holder. There were

also several air fresheners in the front of the vehicle that, in the trooper's experience, often were used to mask the odor of drugs.

Trooper Hope returned to his vehicle to check Appellant's documentation. Upon learning that Appellant had an extensive criminal history that included drug felonies in both Pennsylvania and Maryland, Trooper Hope radioed for backup. The trooper returned to Appellant's vehicle and, without returning his documentation or issuing the written warning, asked Appellant to step out of the vehicle to talk to him. Appellant complied. When Trooper Hope asked Appellant again about the purpose of his trip, Appellant offered a different story, namely, that he was going to the Gucci store at the King of Prussia Mall to buy a belt. He denied having any drugs, weapons, or other illegal items in the vehicle. When asked whether he was ever in trouble with the law, Appellant stated that he had a conviction for a small amount of marijuana fifteen years before, which was inconsistent with the trooper's information. Trooper Hope asked Appellant if he would consent to a search of the vehicle, but Appellant declined.

The trooper called several K-9 units for a vehicle sniff, and a unit responded in approximately forty-five minutes. The K-9 officer alerted to the vehicle, signaling the presence of contraband. A subsequent search yielded four small baggies of cocaine, two baggies of heroin, a skull mask, one baggie of fentanyl, one individual packet of heroin, a .9 millimeter handgun loaded with jacketed hollow point bullets, a law-enforcement-only magazine, and a

third cell phone. Appellant refused to answer any questions when the trooper asked if he had a license to carry the firearm.

Appellant was placed under arrest and charged as aforementioned. He filed a counseled omnibus pre-trial motion in which he challenged the legality of the detention and search, and sought to suppress the contraband seized. On January 16, 2018, the suppression court issued an order denying suppression and the case proceeded to a bench trial. On June 11, 2018, the court found Appellant guilty of all charges and sentenced him seven days later. Following the denial of his post-sentence motion, Appellant filed this timely appeal. Both the trial court and Appellant complied with Pa.R.A.P. 1925, and this matter is ready for our review.

Appellant raises two issues:

A. Did the suppression court commit an error of law by denying Appellant's motion to suppress because the police lacked sufficient grounds to conduct any investigation for contraband and also detained Appellant beyond the initial traffic stop thereby illegally extending the stop beyond investigating the reason for the initial stop?

B. Did the suppression court commit an error of law by denying Appellant's motion to suppress because the police lacked [grounds] to detain Appellant beyond investigating the initial traffic stop and unnecessarily extending it beyond investigating the reason for the initial stop given the lack of legal justification for doing so?

Appellant's brief at 3.

"Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's

factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." ***Commonwealth v. Jones***, 988 A.2d 649, 654 (Pa. 2010). Since the Commonwealth prevailed before the suppression court, we may consider only the Commonwealth's evidence and so much of the defendant's evidence as remains uncontradicted. ***Id***.

Appellant contends first that the trial court erred in denying his motion to suppress because the trooper, under the totality of the circumstances, lacked reasonable suspicion to detain him in order to investigate the vehicle for the presence of contraband. Appellant alleges that nervousness, two cell phones, air fresheners, an inconsistent story, and a prior criminal history are legally insufficient to establish reasonable suspicion for an investigative detention. Appellant's brief at 12. He relies upon ***Commonwealth v. Reppert***, 814 A.2d 1196 (Pa.Super. 2002) (*en banc*), where we held that neither furtive movements nor excessive nervousness provided a sufficient basis upon which to conduct an investigative detention. He also directs our attention to ***Commonwealth v. Dales***, 820 A.2d 807 (Pa.Super. 2003), in which, on similar facts, we held that the smell of Bactine, the presence of several air fresheners, and defendant's nervousness and inconsistent answers did not rise to more than a hunch that criminal activity was afoot. Appellant argues that the additional circumstances present herein, his years-old criminal contacts and inconsistencies in his story, were innocuous. Appellant's brief at 20. He contends that Trooper Hope had only a mere suspicion of criminal

activity that was insufficient to justify an investigative detention beyond the traffic stop. *Id*. (citing *Commonwealth v. Cartegena*, 63 A.3d 294 (Pa.Super. 2013)(*en banc*) (finding no reasonable suspicion to conduct a protective weapons search based on a nighttime traffic stop, tinted windows, and the appellant's nervousness and refusal to put down his windows)). Appellant argues that here, as in each of the aforementioned cases, the totality of circumstances fell short of reasonable suspicion for an investigatory detention.

Appellant also directs our attention to *Commonwealth v. Strickler*, 757 A.2d 884 (Pa. 2000), and *Commonwealth v. Freeman*, 757 A.2d 903 (Pa. 2000), in support of his contention that police may not detain a motorist after a valid traffic stop ends unless something else occurs **thereafter** that warrants justification to do so. Appellant's brief at 23. Appellant argues that since the purpose of the initial stop had ended, the subsequent round of police questioning constituted an illegal detention because the trooper observed no new circumstances after he ran Appellant's information through the system that would supply reasonable suspicion. *Id*. at 23.

In further support of his position that the investigatory detention and subsequent search of the vehicle for contraband herein was unlawful because the initial traffic stop for tinted windows had ended, and that the facts gathered during that stop could not be used to provide reasonable suspicion to support the detention and sniff search, Appellant cites *Commonwealth v.*

***Ortiz***, 786 A.2d 261 (Pa.Super. 2001). Therein, we held that where the officer informed the defendant he was "free to go," the officer's resumption of questioning "reinitiated an investigative detention without the requisite reasonable suspicion" and the ensuing search was illegal. ***Ortiz***, ***supra*** at 264.

The Commonwealth argues that the trooper's observations during the initial stop for the tinted windows could and did provide reasonable suspicion of drug activity to justify prolonging the traffic stop to wait for the K-9 unit to arrive. It points out that ***Ortiz*** was overruled for the proposition cited by Appellant, citing ***In the Interest of A.A.***, 195 A.3d 896 (Pa. 2018). Our High Court held therein that circumstances garnered during the initial traffic stop may be used to support a finding of reasonable suspicion for an investigative detention. ***Id***. at 905, 907-10. The Commonwealth notes further that K-9 "sniffs" only require reasonable suspicion, not probable cause. ***Commonwealth v. Rogers***, 849 A.2d 1185, 1190 (Pa. 2004). Thus, the Commonwealth maintains, the K-9 sniff that alerted to contraband in Appellant's vehicle was lawful.

Pennsylvania law is well settled that there are three levels of interactions between police and the public.

> Article I, § 8 of the Pennsylvania Constitution and the Fourth Amendment to the United States Constitution both protect the people from unreasonable searches and seizures. Jurisprudence arising under both charters has led to the development of three categories of interactions between citizens and police. The first, a "mere encounter," does not require any level of suspicion or

carry any official compulsion to stop or respond. The second, an "investigative detention," permits the temporary detention of an individual if supported by reasonable suspicion. The third is an arrest or custodial detention, which must be supported by probable cause.

***Commonwealth v. Lyles***, 97 A.3d 298, 302 (Pa. 2014) (citations omitted).

At issue herein is whether there was reasonable suspicion to support the investigative detention for the dog sniff. In ***Commonwealth v. Cottman***, 764 A.2d 595, 598-99 (Pa.Super. 2000), we defined "reasonable suspicion" as follows:

> The question of whether reasonable suspicion existed at the time of an investigatory detention must be answered by examining the totality of the circumstances to determine whether there was a particularized and objective basis for suspecting the individual stopped of criminal activity. Thus, to establish grounds for reasonable suspicion, the officer whose impressions formed the basis for the stop must articulate specific facts which, in conjunction with reasonable inferences derived from those facts, led him reasonably to conclude, in light of his experience, that criminal activity, was afoot.

As our High Court reasoned in ***Commonwealth v. Cook***, 735 A.2d 673, 677 (Pa. 1999), while "certain facts, taken alone, do not establish reasonable suspicion . . . a combination of these facts may establish reasonable suspicion."

Appellant's reliance on ***Strickler***, ***Freeman***,[1] and ***Ortiz*** is misplaced. In ***A.A.***, ***supra***, our Supreme Court reaffirmed our decision in

---

[1] In ***In the Interest of A.A.***, 195 A.3d 896, 910 (Pa. 2018), our Supreme Court expressly stated that, "***Freeman*** does not stand for the proposition that

*Commonwealth v. Kemp*, 961 A.2d 1247 (Pa.Super. 2008) (*en banc*), overruling *Ortiz* and its progeny "to the extent that they hold that facts gathered during a valid traffic stop cannot be utilized to justify an investigatory detention occurring after a police officer has indicated that a defendant is free to leave." *Kemp*, *supra* at 1260. The "totality of the circumstances approach allows the court to consider all facts at the officer's disposal and does not require the court to disregard those adduced during a valid interdiction." *A.A.*, *supra* at 907-910.

In this case, Trooper Hope was a sixteen-year Pennsylvania State Police veteran with extensive knowledge of drug interdiction involving vehicles. N.T. Suppression, 8/1/16, at 4-5. He testified as to the circumstances that occurred during the traffic stop that provided reasonable suspicion that criminal activity was afoot. When he first signaled to Appellant to pull over, Appellant stopped abruptly just short of a wide pull-off area, placing the trooper in an unsafe location from which to approach Appellant's vehicle. *Id*. at 7. In his experience, this is a maneuver "commonly used . . . when someone is involved in criminal activity" and it is calculated to deter police from asking for consent to search the vehicle. *Id*. at 8. Although the trooper immediately advised Appellant that he would receive only a warning for the

_____

information lawfully gathered during the initial traffic stop cannot be used to support reasonable suspicion for a second stop." Thus, facts garnered during an initial stop can be used to establish reasonable suspicion to justify an investigative detention even if there has been a "break."

- 9 -

excessively tinted windows, Appellant's right hand was visibly shaking and he appeared to be extremely nervous. *Id*. The trooper observed multiple air fresheners in the front of the vehicle, which, in his experience, were commonly used to mask the odor of drugs, and two cell phones. *Id*. at 10-11. The trooper cited the inconsistencies in Appellant's stated purpose for traveling to King of Prussia Mall, his misrepresentation of his criminal history, and the fact that he had an extensive criminal drug history involving drugs and firearms. *Id*. at 11-12.

The suppression court concluded that Trooper Hope articulated specific observations that enabled him to reasonably conclude that criminal activity was afoot and detain Appellant further for investigation. We find distinguishable **Reppert**, **Dales**, and **Cartagena**, relied upon by Appellant, as Trooper Hope observed additional circumstances herein that contributed in the aggregate to the suppression court's findings of reasonable suspicion to support an investigative detention. For these reasons, we find no error or abuse of discretion in the suppression court's finding that the circumstances articulated by Trooper Hope constituted reasonable suspicion to detain Appellant while a K-9 unit was summoned to conduct a sniff of the vehicle.

Appellant's second issue is that the suppression court erred in denying his motion to suppress because the detention, even if supported by reasonable suspicion, was too long. He contends that the one hour and five minutes from the initial traffic stop to the arrival of the K-9 officer in this case unreasonably

prolonged the traffic stop, and was therefore unlawful. Appellant's brief at 32. Appellant relies on **Rodriquez v. United States**, ___ U.S. ___, 135 S. Ct. 1609 (2015), in support of his contention that "a traffic stop can become unlawful if it is prolonged beyond the time reasonably required to complete the mission of issuing a warning ticket." **Id**. at 1615. The **Rodriguez** Court further explained that the "mission" included "ordinary inquiries incident to the stop. . . such inquiries include checking driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." **Id**.

Appellant cites **United States v. Sharpe**, 470 U.S. 675 (1985), as defining a reasonable legal duration of detention. The **Sharpe** Court stated, "In assessing whether a detention is too long in duration . . . we consider it appropriate to examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." **Id**. at 686. He directs our attention to **Commonwealth v. Joseph**, 34 A.3d 855 (Pa.Super. 2012) (citing **United States v. Place**, 462 U.S. 696 (1983)), in support of his claim that the detention here was too long.

Appellant's reliance on **Rodriguez**, **Joseph**, and **Place** misses the mark. **Rodriguez** does not address the issue before us as the United States Supreme Court held that it was indeterminable from the record if there was reasonable suspicion to conduct a K-9 sniff, and remanded for that

- 11 -

determination. **Joseph** involved the seizure of a vehicle, which we held "could not be constitutionally justified as a '**Terry** stop' based upon mere reasonable suspicion." **Joseph**, **supra**, at 862. In **Place**, the seizure of luggage at an airport and its transport for an indeterminate amount of time to enable the police to obtain a search warrant was found to be unreasonable under the Fourth Amendment where the respondent was not informed where it was being transported, for how long, and how it would be returned.

The issue herein is the reasonableness of the length of an investigative detention supported by reasonable suspicion to allow a K-9 unit to respond for a vehicle sniff. Our decision in **Commonwealth v. Freeman**, 150 A.3d 32, 44 (Pa.Super. 2015), relying upon **Sharpe**, **supra**, informs our disposition herein. We held that in determining whether the length of detention is too long, the proper focus is the officer's responsibility and diligence. In **Freeman**, the stop occurred in a rural area. Within the first half hour, the appellant's vehicle was moved to a safer location, he was informed of the violation, and he was questioned. At that point, the trooper called for backup and a canine unit, and once the dog arrived, the search was quickly completed. We held that the detention for approximately one hour and fifteen minutes from the initial stop in a rural area was not unreasonable as there was no evidence that it was prolonged for any improper reason.

The suppression court found that the forty-five-minute detention of Appellant while waiting for the canine officer would be excessive for a regular

traffic stop. However, because Trooper Hope had reasonable suspicion that criminal activity was afoot, he was justified in detaining Appellant for that time to allow a K-9 unit to arrive. We view the fact that Trooper Hope contacted several K-9 units as evidence of both his diligence and that he did not prolong the stop for an improper reason. We find no abuse of discretion.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 08/14/2019