COMMONWEALTH of Pennsylvania, Appellee,

v.

Robert COTTMAN, Appellant.

Superior Court of Pennsylvania.

Submitted Nov. 15, 2000.
Filed Dec. 13, 2000.

---

Monty J. Baston, Harrisburg, for appellant.

Eric R. Augustine, Asst. Dist. Atty., Harrisburg, for Com., appellee.

Before CAVANAUGH, STEVENS and HESTER, JJ.

STEVENS, J.:

¶ 1 This is an appeal from the judgment of sentence entered in the Court of Common Pleas of Dauphin County on June 8, 2000, following Appellant's conviction by the court of carrying a firearm without a license and possession of a firearm by a minor. Herein, Appellant contends that the trial court erred in failing to suppress physical evidence seized by police. We affirm.

¶ 2 Prior to trial, Appellant filed an omnibus pre-trial motion to suppress which, following a hearing, was denied by the court on May 22, 2000. Thereafter, on June 8, 2000, Appellant was found guilty of the above charges and, on that day, was sentenced, *inter alia*, to a six (6) to twenty-three (23) month term of imprisonment on the charge possession of a firearm by a minor,[1] and a three (3) year period of intermediate punishment on the charge of carrying a firearm without a license. This timely appeal followed.

¶ 3 Appellant claims that the police did not have probable cause or reasonable suspicion to stop him; therefore, the contraband that was recovered by police should have been suppressed by the trial court as the result of an unlawful seizure.

When we review the ruling of a suppression court, we must determine whether its factual findings are supported by the record. Where the defendant challenges an adverse ruling of the suppression court, we will consider only the evidence for the prosecution and whatever evidence for the defense which is uncontradicted on the record as a whole; if there is support on the record, we are bound by the suppression court, and we may reverse that court only if the legal conclusions drawn from these facts are erroneous.

*Commonwealth v. Holt,* 711 A.2d 1011, 1014 (Pa.Super.1998) (citations omitted).

¶ 4 However, where the factual findings made by the suppression court are not supported by the evidence of record, we may reject those findings. *Commonwealth v. Benton,* 440 Pa.Super. 441, 655 A.2d 1030, 1032 (1995) (*citing Commonwealth v. Burnside,* 425 Pa.Super. 425, 625 A.2d 678, 680 (1993)). Likewise, if the suppression court misapplies the law, we are also required to reverse the determination of the court. *Commonwealth v. Queen,* 536 Pa. 315, 319, 639 A.2d 443, 445 (1994).

¶ 5 With the above standards in mind, the relevant facts of this case are as follows: On the evening of November 30, 1999, Officer Kevin Gorman of the Harrisburg Bureau of Police was on patrol in a marked police vehicle. Officer Gorman had four (4) years experience as a Harrisburg Police Officer, N.T. 4/12/00 at 2, and had made between twenty (20) and thirty (30) arrests involving firearms, *Id.* at 3, and over one hundred (100) drug arrests. *Id.* at 5. Officer Gorman stated that the area near Reservoir Park in Harrisburg was a nuisance area, and the police re-

---

1. The court noted that, "This sentence shall begin and be computed from December 3, 1999, and from which sentence we grant the Defendant immediate parole." N.T. 6/8/00 at 8.

ceived almost nightly complaints of large groups of juveniles and/or adults gambling, smoking marijuana, selling drugs, and shots being fired. *Id.* at 6.

¶ 6 On the evening in question, Officer Gorman was called to Reservoir Park to deal with an incident in the area. *Id.* at 7. After the incident was cleared, he observed, in a nearby area, an occupied vehicle, an individual leaning in the passenger window, and two individuals behind him. *Id.* at 6–7. At the suppression hearing, Officer Gorman identified the individual leaning in the window as Appellant. *Id.* at 8. The officer went on to state that, when the individual leaning in the window noticed the police on the evening in question, the individual shielded his body while reaching toward the front of his body, and then turned away from the officer. *Id.* at 7–9. The vehicle sped away and Officer Gorman drove toward the three individuals.

¶ 7 As the officer was exiting his vehicle, he asked if he could speak to the individuals. Appellant took off running and, in doing so, "was making an all-out effort to keep holding on to something that was in the front of his shirt." *Id.* at 10. Appellant "was running as if he was holding something heavy in front of him and didn't want to drop it." *Id.* It was at this point that the officer "suspected that [Appellant] was indeed holding a weapon in the front of him, that's when [he] started to chase [Appellant]." *Id.* Officer Gorman apprehended Appellant and conducted a pat-down search at which time the officer heard the jingling of ammunition. *Id.* at 13. Five (5) .25 caliber shells were found in Appellant's outside coat pocket. *Id.* at 13–14. Since no weapon was recovered and, upon verification, no warrants existed for Appellant's arrest, he was released. *Id.*

¶ 8 Immediately thereafter, Officer Gorman searched the area where Appellant had traversed a fence as he ran from the officer, and recovered a .25 caliber handgun that contained ammunition identical to that found on Appellant's person. *Id.* at 14–15. Subsequently, Appellant was arrested and charged with carrying a firearm without a license, possession of a firearm by a minor, and theft by receiving stolen property; and, later, convicted of carrying a firearm without a license and possession of a firearm.

¶ 9 Appellant contends that Officer Gorman had neither probable cause nor reasonable suspicion to justify a stop and seizure. Therefore, he argues that the court erred in failing to suppress the ammunition seized from his person and the gun found along the flight path. We disagree.

■■■■ ¶ 10 There are three categories of interaction between citizens and the police: "mere encounters" (or requests for information); "investigative detentions," which subject suspects to a stop and a period of detention, but do not involve such coercive conditions as to constitute the functional equivalent of an arrest; and "arrests" or "custodial detention." *Commonwealth v. Beasley,* 761 A.2d 621 (Pa.Super. 2000).

> A mere encounter between police and a citizen need not be supported by any level of suspicion, and carr[ies] no official compulsion on the part of the citizen to stop or to respond. No constitutional provision prohibits police officers from approaching a citizen in public to make inquiries of them. However, [i]f the police action becomes too intrusive, a mere encounter may escalate into an investigatory [detention] or seizure.... [P]rior to subjecting a citizen to [an] investigatory detention, [the police] must harbor at least a reasonable suspicion that the person seized is then engaged in unlawful activity. [T]he question of whether reasonable suspicion existed at the time of an investigatory detention must be answered by examining the totality of the circumstances to determine whether there was a particularized and objective basis for suspecting the individual

stopped of criminal activity. Thus, to establish grounds for reasonable suspicion, the officer whose impressions formed the basis for the stop must articulate specific facts which, in conjunction with reasonable inferences derived from those facts, led him reasonably to conclude, in light of his experience, that criminal activity, was afoot.

*Beasley,* 761 A.2d 621, 624 (citations and quotations omitted)

 ¶ 11 As correctly argued by Appellant, flight alone is insufficient to establish reasonable suspicion. *Commonwealth v. Matos,* 543 Pa. 449, 672 A.2d 769 (1996). However, flight, when considered together with additional facts known or observed by police, may warrant investigation. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *See also Commonwealth v. Riley,* 715 A.2d 1131, 1135 (Pa.Super.1998) (finding that, although a certain fact alone may not justify a stop by police, a combination of circumstances may be sufficient to establish reasonable suspicion).

 ¶ 12 In the case *sub judice,* once Officer Gorman approached the individuals in question, asked if he could speak to them, and Appellant took flight, the officer's pursuit of Appellant constituted a seizure. *See Id.* at 1135. Contrary to Appellant's assertion, however, we conclude that Officer Gorman had the requisite reasonable suspicion to stop Appellant.

¶ 13 In *Commonwealth v. Cook,* 558 Pa. 50, 735 A.2d 673 (1999), the Supreme Court considered the totality of the circumstances and found that reasonable suspicion existed. In that case, two Harrisburg Police Officers were patrolling an area of the city in an unmarked vehicle when they noticed three individuals on a corner engaged in conversation. As the officers passed the group at a slow rate, the officers observed the appellant take his left hand out of his front pocket in a fist and reach towards one of the other individuals in the group, who attempted to re-

ceive the unidentified item. In order to investigate further, the officers made a U-turn and approached the group. When the appellant noticed the officers, he placed his hand back in his pocket and began backing away from the group. One of the officers exited the vehicle, identified himself as a police officer, and began walking toward the group. The appellant immediately began to run, at which time he was chased by the officer. During the pursuit, the officer observed the appellant pull a bag from his pocket and throw it into a yard. The appellant was apprehended and the bag, which contained crack cocaine, was recovered.

¶ 14 The Supreme Court found that:
[B]ased on the facts surrounding the instant case, including the police officers' training, expertise and past drug arrests in the same area; the attempted exchange of an unidentified object in a high crime area, appellant's nervous behavior when the police made a U-turn; and appellant's flight, the police officers were able to point to specific and articulable facts, which in light of their police training and expertise, supported a finding of reasonable suspicion.

*Id.* at 58–59, 735 A.2d at 677–678 (footnotes omitted).

¶ 15 Appellant argues that the facts in the present case are distinguishable from those in *Cook* in that the police officers in *Cook* actually observing transactional behavior on the part of the appellant. Appellant, therefore, contends that "[i]t was the transactional behavior, coupled with the flight in a high crime area, which created reasonable suspicion to believe that criminal activity was afoot." Brief of Appellant at 17.

¶ 16 We find, however, that based on the circumstances in the present case, including Officer Gorman's experience as a law enforcement officer; Appellant's presence in a high crime area; Appellant's furtive movement to conceal an object when seen by police; and Appellant's flight, there existed specific and articulable facts to

**600**

substantiate a finding of reasonable suspicion by Officer Gorman. We note that, although Officer Gorman did not see the item being concealed by Appellant, his experience and common sense dictated that in all likelihood Appellant possessed illegal contraband. As such, Officer Gorman was justified in stopping and frisking Appellant, *See Commonwealth v. Fink,* 700 A.2d 447 (Pa.Super.1997), and in seizing the contraband from Appellant and the abandoned weapon along the flight path. *See Cook, supra.*

¶ 17 In addition, however, we note that the Supreme Court has stated that:

> In order to prevail on a [suppression] motion, ... a defendant is required to separately demonstrate a personal privacy interest in the area searched or effects seized, and that such interest was 'actual, societally sanctioned as reasonable, and justifiable.' Such a legitimate expectation of privacy is absent where an owner or possessor meaningfully abdicates his control, ownership or possessory interest.

*Commonwealth v. Hawkins,* 553 Pa. 76, 81–82, 718 A.2d 265, 267 (1998) (citation and footnote omitted).

¶ 18 In the case *sub judice,* Appellant abandoned any personal privacy interest in the weapon when it was discarded along the flight path. *See Id.* at 82, 718 A.2d at 267–268. Accordingly, since he lacked a legitimate expectation of privacy, his motion to suppress was properly denied.

¶ 19 Based on the foregoing, we find that the suppression court properly denied Appellant's motion to suppress and, therefore, we affirm the judgment of sentence.

¶ 20 Affirmed.