J-S46012-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| CURTIS ANDREW BARRINGER, JR. | |
| Appellant | No. 3519 EDA 2013 |

Appeal from the Judgment of Sentence November 26, 2013
In the Court of Common Pleas of Delaware County
Criminal Division at No(s): CP-23-CR-0003130-2013

BEFORE:  MUNDY, J., OLSON, J., and MUSMANNO, J.

MEMORANDUM BY MUNDY, J.:                    **FILED OCTOBER 14, 2015**

Appellant, Curtis Andrew Barringer, Jr., appeals from the November 26, 2013 judgment of sentence of three to six months in county prison, imposed after the trial court found him guilty of driving under the influence of alcohol (DUI).[1]  Appellant challenges the trial court's denial of his pretrial motion to suppress evidence of his intoxication on the basis that "the motor vehicle stop and subsequent search of [Appellant] was without probable cause or reasonable suspicion."  Appellant's Omnibus Pre-Trial Motion, 8/28/13.  After careful review, we affirm.

_____

[1] 75 Pa.C.S.A. § 3802(a)(1).

The trial court made the following factual findings after a hearing on Appellant's suppression motion.

> On March 19, 2013, Officer Matthew Bellucci of the Media Borough Police Department was on duty in a marked patrol vehicle.
>
> While on duty, Officer Bellucci received a dispatch call from delcom. The dispatch relayed that a 911 call was placed from John's Bar, located at 116 S. Monroe Street, Media, PA. The caller was silent but the receiver could clearly hear one man telling another to leave the bar.
>
> Officer Bellucci arrived at John's Bar within a minute after he received the dispatch.
>
> Upon Officer Bellucci's arrival, he spoke with the bartender and was advised that a black male known as "Curtis" became intoxicated and unruly while in the bar – yelling at patrons, screaming obscenities and racial slurs, and refused to leave.
>
> When the bartender told [Appellant] that he was going to call the police, [Appellant] purchased another beer and left the bar.
>
> The bartender told Officer Bellucci that he witnessed [Appellant] drive down Monroe Street in a maroon Mercedes.
>
> Officer Bellucci relayed this information to the other responding officers. As they were standing outside the bar, Officer Bellucci could clearly see a maroon Mercedes parked approximately 100 yards away, in the Wawa parking lot.
>
> Based on the call, the information from the bartender, and seeing a vehicle matching the description only a few yards away, the officers drove to the Wawa to investigate.
>
> Officer Bellucci approached the maroon Mercedes from the driver's side. He clearly observed [Appellant] sitting in the driver's seat of the vehicle,

with the engine on, staring straight ahead. In order to get [Appellant's] attention, Officer Bellucci knocked on the window.

Officer Bellucci observed that [Appellant] had bloodshot eyes, slurred speech, and his breath smelled of alcohol whenever he spoke. [Appellant] was very standoffish, did not want to answer questions, and was making statements wholly unrelated to what Officer Bellucci was asking.

When asked for his driver's ID, [Appellant] handed over a veteran's registration card instead. It took Officer Bellucci several attempts before [Appellant] handed over his driver's license.

Based on Officer Bellucci's training, education, and experience as a police officer, it was his opinion that [Appellant] was under the influence of alcohol.

[Appellant] was asked to step out of his vehicle and to take a breath test, which registered a .211.

[Appellant] refused to perform any field sobriety tests, but Officer Bellucci observed that [Appellant] was unsteady on his feet.

[Appellant] was then arrested for [DUI].

Trial Court Order, 9/19/13, at 1-3 (paragraph numbering and footnotes omitted).

The trial court summarized the procedural history as follows.

On March 19, 2013, Appellant was arrested and charged with driving under the influence []. On August 28, 2013, counsel for [Appellant] filed an omnibus pre-trial motion to suppress physical evidence and to reduce bail.

[The trial c]ourt held a hearing on [Appellant's] omnibus pre-trial motion on September 1[7], 2013. At the hearing, the Commonwealth presented testimony from Officer Matthew Bellucci of the Media Borough Police Department who was the arresting

officer. After hearing testimony and argument, this Court denied Appellant's bail motion via Order on September 18, 2013. [The trial c]ourt issued Findings of Fact and Conclusions of Law on September 19, 2013, denying Appellant's motion to suppress evidence.

On October 8, 2013, counsel for Appellant filed another motion to reduce bail which [the trial c]ourt granted on October 21, 2013. On October 21, 2013, Appellant informed [the trial c]ourt he was no longer represented by the Office of the Public Defender. New counsel entered his appearance on behalf of Appellant.

On November 26, 2013, [the trial c]ourt held a non-jury [trial] and found Appellant guilty of [DUI]. Appellant was sentenced to … 3-6 months in Delaware County Prison. [The trial c]ourt also ordered that Appellant be immediately released from prison because he had been incarcerated since March 20, 2013, which exceeded the sentence imposed.

On December 5, 2013, Appellant filed a timely notice of appeal listing his trial counsel as his appellate counsel. On December 19, 2013, [the trial c]ourt received the Superior Court's docketing statement which also listed Appellant's trial counsel as counsel for Appellant. As a result, [the trial c]ourt sent a request for a 1925(b) statement to trial counsel on December 20, 2013. After issuing the Order, trial counsel informed [the trial c]ourt that he was not representing Appellant on appeal. [The trial c]ourt advised trial counsel via letter correspondence that his name was on the Superior Court docket so he would have to file a motion to withdraw with the Superior Court so that [the trial c]ourt could appoint new counsel.

On January 6, 2014, trial counsel filed a motion to withdraw with the Superior Court stating that he was never retained to represent Appellant on appeal and that Appellant was appealing against his recommendations. A copy of the motion to withdraw was not sent to [the trial c]ourt until January 24,

2014. After receiving a copy of trial counsel's application to withdraw, [the trial c]ourt advised Appellant via letter correspondence that he should attempt to re-qualify for representation with the Delaware County Office of the Public Defender.

On February 21, 2014, [the trial c]ourt received an Order from the Superior Court granting trial counsel's motion to withdraw. [The trial c]ourt advised the Superior Court via letter correspondence that Appellant qualified with the Delaware County Office of the Public Defender and that this Court granted new counsel an extension of time to file a 1925(b) statement. Due to a delay in receiving the notes of testimony, counsel asked for a second continuance which [the trial c]ourt granted on April 4, 2014.

On June 3, 2014, Appellant filed his 1925(b) statement raising the sole issue that [the trial c]ourt erred in denying his motion to suppress. [The trial c]ourt … adopts its reasoning set forth in its [September 19, 2013] Findings of Facts and Conclusions of Law[].

Trial Court Opinion, 6/6/14, at 1-4 (footnotes omitted).

On appeal, Appellant presents a single issue for our review.

Whether [the trial c]ourt erred in refusing to suppress the fruits of the warrantless vehicle stop because the seizing officer had no reasonable suspicion to detain, nor probable cause to arrest Appellant at the instant when the seizing officer parked his patrol car behind Appellant's vehicle. All of the evidence was tainted by this violation. The seizure violated Appellant's United States and Pennsylvania constitutional, statutory and common law rights.

Appellant's Brief at 8.

We are guided by the following principles in conducting our review of

Appellant's issue.

> Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where … the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

**Commonwealth v. Jones**, 988 A.2d 649, 654 (Pa. 2010) (citations and quotation marks omitted), *cert. denied*, **Jones v. Pennsylvania**, 131 S.Ct. 110 (2010).

Appellant challenges the legality of his detention by Officer Bellucci. Resolution of this question is dependent upon the nature of the interaction.

> The Fourth Amendment of the U.S. Constitution and Article I, Section 8 of our state Constitution protect citizens from unreasonable searches and seizures. To safeguard this right, courts require police to articulate the basis for their interaction with citizens in increasingly intrusive situations:
>
> > The first of these is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond.

- 6 -

> The second, an "investigative detention" must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.
>
> *Commonwealth v. Downey*, 39 A.3d 401, 405 (Pa. Super. 2012) (citation omitted).

*Commonwealth v. McAdoo*, 46 A.3d 781, 784 (Pa. Super. 2012), *appeal denied*, 65 A.3d 413 (Pa. 2012).   Appellant argues "there is not enough in the record to establish reasonable suspicion for the investigatory stop." Appellant's Brief at 16.  Specifically, Appellant asserts that "the police, who witnessed no wrongdoing, effected a detention based completely on hearsay, [and] their suspicion was completely dependent on what the declarant, the bartender, told them." *Id*. at 12.   Appellant contends that the bartender testified that the Appellant did not show signs of intoxication,[2] such that "the police had no reliable information on intoxication until after they seized upon Appellant and his vehicle.  They acted on a hunch and … hunches are a credit to law enforcement, but do not equate to reasonable suspicion[.]" *Id*. Appellant states, "[t]he police witnessed zero misconduct on the part of Appellant at the time of the seizure.  Here, the officer proceeded to arrest,

_____

[2] Significantly, the bartender did not testify at the September 17, 2013 suppression hearing.  There was only one witness at the suppression hearing, Officer Matthew Bellucci, who was called by the Commonwealth.

or at a minimum detain, Appellant by driving to his car and blocking Appellant's vehicle." *Id*. at 15-16.

Our review of both the record and case law belies Appellant's argument, and comports with the trial court's conclusion that Appellant was subject to an investigative detention, not a custodial detention, based on reasonable suspicion.

Media Borough Police Officer Matthew Bellucci was the only witness to testify at the suppression hearing. Bellucci related that he "received a dispatch from DelCom that they had received a 911 hang up call and open line from John's Bar and Grill. The call taker could overhear a subject on the other end, asking another subject to leave the bar. Upon my arrival, I spoke with the bartender, who stated he was the one who made the 911 call."[3] N.T., 9/17/13, at 23. Bellucci further testified that the bartender told him a black male known as Curtis "became disorderly in the bar," was asked to leave, and drove off in a maroon Mercedes. *Id*. at 24-25.[4] Bellucci then saw a maroon Mercedes in the parking lot of a Wawa 100 yards away. *Id*. at 26. When Bellucci approached Appellant, Appellant was "standoffish" and

---

[3] Although at the hearing Appellant's counsel objected to Bellucci's testimony as hearsay, the trial court overruled the objection, stating, "It's not being offered for the truth of the matter asserted. It's being offered to show why the officer reacted the way he did, so overruled." *Id*. at 25.

[4] See footnote 2, *supra*.

refused to answer questions. *Id*. at 27. Bellucci described the encounter as follows.

> [Appellant] had extremely red and bloodshot eyes. When he was answering questions to us, he was making unrelated statements, such as the white devils brought down the twin towers. You know, we had no authority over him. Things to that effect. He slurred his speech as he spoke with us. So it was my opinion, he was most likely under the influence of alcohol, so we asked him to step from the vehicle and perform some field sobriety tests for us. … He did step out of the vehicle. He was asked to submit to a portable breath test, preliminary breath test, which he agreed to. It showed his BAC to be a .211. I then asked him to perform two other field sobriety tests, which he refused to do. As he was standing there, he swayed as he stood. He was unsteady on his feet. Again, as he spoke to me, more like yelled – yelled at me, the odor of alcoholic beverage [was] on his breath and it was pretty easy to detect the more he spoke.

*Id*. at 28-29.

On cross-examination, Bellucci testified that after receiving the dispatch, and going to the bar, he was "going to I.D. and get that person's side of what occurred in that bar." *Id*. at 39. Bellucci conceded that "depending on the information that we obtained once we made contact with that subject, an arrest was possible." *Id*. at 40. He stated that he explained to Appellant that he had received a report of a disorderly subject in a bar, and asked Appellant whether he had been at John's Bar and Grill. *Id*. at 48. Bellucci testified as follows.

> And just based on reasonable suspicion, if a person told me that a drunk disorderly subject just left his

bar in a maroon Mercedes and I see a maroon Mercedes operated by a black male, I'm going to put two and two together and figure that this most likely is the person I'm looking for.

*Id*. at 52.

Given the foregoing, the trial court denied Appellant's suppression motion on the basis that Bellucci possessed reasonable suspicion to detain Appellant. The trial court concluded, "[a]fter speaking with the bartender, Officer Bellucci had reason to believe that [Appellant] was driving under the influence and that [Appellant's] unruly behavior may still cause harm to the public. Furthermore, seeing a car that matched the description only a few yards away was reason to investigate further." Order, 9/19/13, at 4, ¶ 10.

We agree with the trial court, and are not persuaded by Appellant's assertion that "there is not enough in the record to establish reasonable suspicion for the investigatory stop." Appellant's Brief at 16.

Police must have reasonable suspicion that a person seized is engaged in unlawful activity before subjecting that person to an investigative detention. *Commonwealth v. Cottman*, 764 A.2d 595, 598 (Pa. Super. 2000). "Reasonable suspicion must be based on specific and articulable facts, and it must be assessed based upon the totality of the circumstances[.]" *Commonwealth v. Williams*, 980 A.2d 667, 671 (Pa. Super. 2009) (internal quotation and citation omitted), *appeal denied*, 990 A.2d 730 (Pa. 2010). In determining whether reasonable suspicion exists, police officers "need not personally observe the illegal or suspicious conduct,

but may rely upon the information of third parties, including 'tips' from citizens." ***Commonwealth v. Barber***, 889 A.2d 587, 593 (Pa. Super. 2005) (citation omitted).

We further note that pursuant to Pa.R.E. 104(a), a trial court, in making its determination as to the admissibility of evidence in "preliminary questions," "is not bound by the rules of evidence except those with respect to privileges." ***See also Commonwealth v. Raab***, 934 A.2d 695 (Pa. 2007). Thus, during the suppression hearing, the trial court, even though it determined that Bellucci's testimony was not hearsay, would have been permitted to consider hearsay evidence.

From our review of the evidence presented at the suppression hearing, we discern no error in the suppression court's application of the law to the facts of record. The information possessed by Bellucci was sufficient to support his reasonable suspicion that Appellant, at the time of the detention, had been drinking and engaged in unruly behavior. ***See Commonwealth v. Anthony***, 977 A.2d 1182, 1187 (Pa. Super. 2009) (holding reasonable suspicion based on reliable information of third parties supplied to the police justified interrogative detention); ***Commonwealth v. Korenkiewicz***, 743 A.2d 958, 963-964 (Pa. Super. 1999) (holding where stop is based on third party information, such information must be sufficiently specific and the reliability of informant is relevant to that inquiry), *appeal denied*, 759 A.2d 383 (Pa. 2000). Accordingly, we conclude the trial court acted properly and

within its discretion in denying Appellant's suppression motion. We therefore affirm the November 26, 2013 judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/14/2015