J-A29034-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| MICHAEL J. PEIFER | : | No. 607 EDA 2018 |

Appeal from the Order January 29, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  MC-51-CR-0019450-2017

BEFORE:   OTT, J., DUBOW, J., and STEVENS*, P.J.E.

MEMORANDUM BY STEVENS, P.J.E.:                **FILED JANUARY 16, 2019**

The Commonwealth appeals from the order entered by the Court of Common Pleas of Philadelphia County, denying relief from an order of the Philadelphia Municipal Court that granted the suppression motion filed by Appellee Michael J. Peifer.  After careful review, we conclude that the lower court erred in finding that the arresting officer did not have reasonable suspicion to detain Appellee.  Accordingly, we reverse and remand for further proceedings.

On July 1, 2017, at approximately 8:40 p.m., Philadelphia Police Officer Anthony Rosselli received a radio dispatch reporting a burglary in progress, describing the suspect as a white male without a shirt, and indicating the suspect left the scene in a dark SUV with the license plate number SXM-3794. Officer Rosselli indicated that the tip was verified by a "complainant on the job." N.T. 10/19/17, at 7.

---

\*   Former Justice specially assigned to the Superior Court.

Between five and ten minutes later, Officer Rosselli spotted a dark SUV with a license plate of FXM-3794, which matched the tip information except for the first letter. Officer Rosselli observed Appellee, a shirtless white male, step out of the driver's side of the SUV, which was parked three or four blocks away from the reported burglary with the engine still running and the headlights on. After approaching Appellee, Officer Rosselli suspected Appellee was intoxicated as he smelled alcohol on Appellee's breath and noticed Appellee was unsteady on his feet. Officer Rosselli arrested Appellee for DUI.

Thereafter, Appellee filed a suppression motion in the Philadelphia Municipal Court, asserting that Officer Rosselli did not have reasonable suspicion to stop him. After a suppression hearing, the Honorable Karen Yvette Simmons of the Philadelphia Municipal Court granted Appellee's motion. The Commonwealth appealed this decision.

On January 29, 2018, the Honorable Shanese I. Johnson of the Court of Common Pleas denied the Commonwealth's appeal and affirmed the municipal court's suppression order. The trial court concluded that Officer Rosselli did not have reasonable suspicion to stop Appellee as he relied on a tip that was "unverified" and could not corroborate the tip with any independent evidence of Appellee's involvement in criminal activity. Trial Court Opinion, 5/23/18, at 2, 5. The Commonwealth filed this timely appeal.[1]

---

[1] The Commonwealth properly certified in its notice of appeal that the suppression order "will terminate or substantially handicap the prosecution." **See** Pa.R.A.P. 311(d).

The Commonwealth raises one issue for our review:

> Where police stopped [Appellee] just ten minutes after receiving a report from a known citizen that a man matching [Appellee's] description had just committed a burglary and then drove away in a car similar to [Appellee's] car, did the lower court err in ruling that the police did not have reasonable suspicion for an investigatory stop?

Commonwealth's brief, at 4.[2]

When reviewing an appeal of a trial court's order granting a defendant's motion to suppress evidence, we are guided by the following standard:

> When the Commonwealth appeals from a suppression order, we follow a clearly defined standard of review and consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. The suppression court's findings of fact bind an appellate court if the record supports those findings. The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts. ***Commonwealth v. Miller***, 56 A.3d 1276, 1278–1279 (Pa. Super. 2012) (citations omitted). "Our standard of review is restricted to establishing whether the record supports the suppression court's factual findings; however, we maintain *de novo* review over the suppression court's legal conclusions." ***Commonwealth v. Brown***, 606 Pa. 198, 996 A.2d 473, 476 (2010) (citation omitted).

***Commonwealth v. Petty***, 157 A.3d 953, 955 (Pa.Super. 2017).

---

[2] We note that the Commonwealth never challenged the trial court's finding that Officer Rosselli's initial encounter with Appellee constituted an investigatory detention under the Fourth Amendment. Thus, we cannot review this issue and will limit our analysis to assess whether Officer Rosselli had reasonable suspicion to conduct an investigatory detention.

This Court has held that "[t]he question of whether reasonable suspicion existed at the time of an investigatory detention must be answered by examining the totality of the circumstances to determine whether there was a particularized and objective basis for suspecting the individual stopped of criminal activity." *Commonwealth v. Cottman*, 764 A.2d 595, 598-99 (Pa.Super. 2000) (citation omitted).

> Reasonable suspicion exists only where the officer is able to articulate specific observations which, in conjunction with reasonable inferences derived from those observations, led him reasonably to conclude, in light of his experience, that criminal activity was afoot and that the person he stopped was involved in that activity. Therefore, the fundamental inquiry of a reviewing court must be an objective one, namely, whether the facts available to the officer at the moment of intrusion warrant a [person] of reasonable caution in the belief that the action taken was appropriate.

*Commonwealth v. Goldsborough*, 31 A.3d 299, 306 (Pa.Super. 2011).

In our determination of whether there was reasonable suspicion to justify the stop in this case, we note that "[p]olice are justified in stopping a vehicle when relying on information transmitted by a valid police bulletin. … [E]ven where the officer who performs the stop does not have reasonable suspicion, the stop is nonetheless valid if the radio officer requesting the stop has reasonable suspicion." *Commonwealth v. Cruz*, 21 A.3d 1247, 1250 (Pa.Super. 2011) (citing *In re D.M.,* 556 Pa. 160, 164, 727 A.2d 556, 558 (1999); *Commonwealth v. Jackson*, 548 Pa. 484, 490 n. 3, 698 A.2d 571, 574 n. 3 (1997)).

Moreover, in assessing whether there is reasonable suspicion to detain an individual, police officers need not personally observe the individual engaging in criminal or suspicious behavior, but may also rely on information provided by third parties. As the trial court correctly observed, "an anonymous tip alone is insufficient as a basis for reasonable suspicion." *Commonwealth v. Leonard*, 951 A.2d 393, 397 (Pa.Super. 2008). "Because an anonymous tip typically carries a low degree of reliability, more information is usually required before investigating officers develop the reasonable suspicion needed to support an investigatory stop of a suspect." *Commonwealth v. Fell*, 901 A.2d 542, 545 (Pa.Super. 2006).

However, "[i]nformation from a known source that police have corroborated can give rise to reasonable suspicion sufficient to warrant an investigative detention." *Commonwealth v. Butler*, 194 A.3d 145, 149 (Pa.Super. 2018) (quoting *Commonwealth v. Brown*, 606 Pa. 198, 996 A.2d 473, 479 (2010)). This Court has further explained this distinction:

> When the underlying source of the officer's information is an anonymous call, the tip should be treated with particular suspicion. However, a tip from an informer known to the police may carry enough indicia or reliability for the police to conduct an investigatory stop, even though the same tip from an anonymous informant would likely not have done so.
>
> [*Commonwealth v. Lohr*, 715 A.2d 459, 461-62 (Pa.Super. 1998)] (quotation and citations omitted). Indeed, identified citizens who report their observations of criminal activity to police are assumed to be trustworthy, in the absence of special circumstances, since a known informant places himself at risk of prosecution for filing a false claim if the tip is untrue, whereas an

unknown informant faces no such risk. **Commonwealth v. George**, 878 A.2d 881 (Pa.Super.2005); **Lohr, supra**.

> When an identified third party provides information to the police, we must examine the specificity and reliability of the information provided. The information supplied by the informant must be specific enough to support reasonable suspicion that criminal activity is occurring. To determine whether the information provided is sufficient, we assess the information under the totality of the circumstances. The informer's reliability, veracity, and basis of knowledge are all relevant factors in this analysis.
>
> **Commonwealth v. Korenkiewicz**, 743 A.2d 958, 964 (Pa.Super 1999) (*en banc*) (citations omitted).

**Commonwealth v. Barber**, 889 A.2d 587, 593-94 (Pa.Super. 2005).

In this case, the record does not support the trial court's finding that Officer Rosselli relied on an anonymous tip. Rather, Officer Rosselli explained that he stopped Appellee based on a "verified" tip, in which flash information was provided by another officer who had responded to the burglary, spoken to the victim, and relayed the complainant's description of the suspect.[3] N.T. 10/19/17, at 7. Based on these facts, we note that the specific information provided by the informant could be deemed to have heightened reliability because the victim, who was known to police, risked prosecution for false information.[4] In addition, we note that his Court has regarded information

---

[3] "A flash information is based on a report from the initial officers to investigate the scene of a crime and is broadcast to other police units in the district." **Commonwealth v. Jackson**, 519 A.2d 427, 431 (Pa.Super. 1986).

[4] We note that the prosecutor could have developed the record to further clarify on what basis Officer Rosselli had reason to believe the tip was from a known informant.

- 6 -

coming from the actual crime victim as meriting a high degree of reliability. *Cruz*, 21 A.3d at 1251 (citing *In re D.M.,* 556 Pa. at 165, 727 A.2d at 558).

Moreover, when viewing the totality of the circumstances, we cannot agree with the trial court's conclusion that Officer Rosselli did not have reasonable suspicion to detain Appellee. The known informant in this case was able to provide a detailed physical description of the burglar as a shirtless white male who fled the crime scene in a dark SUV with the license plate number SXM-3794. Between five and ten minutes after receiving the flash report, Officer Rosselli observed Appellee, who matched the description given by the victim, present at a location just three or four blocks away from the reported burglary.

For the foregoing reasons, we find the lower court erred in granting Appellee's suppression motion. Therefore, we reverse the trial court's order affirming the municipal court's decision to suppress the evidence in this case. We remand for further proceedings consistent with the decision in this case.

Order reversed. Remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/16/19

- 7 -