J-S13025-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| RODNEY BASKETBILL | : | |
| | : | |
| Appellant | : | No. 1337 EDA 2020 |

Appeal from the Judgment of Sentence Entered June 10, 2020
In the Court of Common Pleas of Bucks County
Criminal Division at No(s):  CP-09-CR-0006733-2018

BEFORE:   OLSON, J., KING, J., and PELLEGRINI, J.[*]

MEMORANDUM BY KING, J.:                    **FILED AUGUST 10, 2021**

Appellant, Rodney Basketbill, appeals from the judgment of sentence entered in the Bucks County Court of Common Pleas, following his stipulated bench trial convictions for promoting prostitution, conspiracy to promote prostitution, false identification to law enforcement, criminal use of a communication facility, sexual abuse of children (two counts), possession of a small amount of marijuana, and possession of drug paraphernalia.[1]  We affirm.

In its opinion, the trial court set forth the relevant facts of this case as follows:

> The Commonwealth called Officer Brian Bielecki to testify about the circumstances surrounding the search of

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 5902(b)(1), 903, 4914(a), 7512(a), 6312(b)(1) and (b)(2); and 35 P.S. §§ 780-113(a)(31)(i) and 780-113(a)(32), respectively.

Appellant's phone. At the time of Appellant's arrest, Officer Bielecki worked in the Bensalem Township Police Department's Special Investigations Unit. Officer Bielecki was conducting a prostitution investigation. The investigation involved looking online at various websites such as Pryor, Backpage, Escort Alligator, List Crawler, and other websites and then locating prostitution advertisements in Bensalem. Once a prostitution advertisement was found, Officer Bielecki would arrange a date through a phone call or text message. On September 24, 2019, Officer Bielecki came upon a prostitution advertisement and another officer used the phone number on the advertisement to arrange a date. Upon learning the date would occur at the Neshaminy Motor Inn in Bensalem in room 314, Officer Bielecki conducted surveillance of the location. Room 314 was registered to Ms. Jazmine Brownlee, the co-defendant. As the other officers responded to room 314 and were making contact with its occupants, Officer Bielecki continued to survey the area to determine if there was anyone in the vicinity paying close attention to room 314. As he was standing on the balcony, Officer Bielecki looked directly below the balcony and noticed a Dodge Charger with Appellant sitting in the driver's seat and a female, who he had noticed during his previous surveillance, in the passenger seat. Officer Bielecki left the balcony and went directly to the vehicle. When he made contact with the vehicle, he smelled marijuana coming from the vehicle and asked Appellant to step out of the vehicle. As Appellant stepped out of the vehicle, he was holding a cell phone and Officer Bielecki asked Appellant to place the cell phone on top of the vehicle. Officer Bielecki asked another officer to call the phone number listed on the prostitution advertisement at that time, and Appellant's phone that he had placed on top of the vehicle began to ring. Appellant was subsequently arrested and his cell phone was searched and analyzed.

(Trial Court Opinion, filed January 5, 2021, at 2-3) (internal record citations omitted).

On October 4, 2019, Appellant filed a motion to suppress. The court held a suppression hearing on November 12, 2019, and at the conclusion of

that hearing the court denied Appellant's motion. On that same day, Appellant proceeded to a stipulated waiver trial, and the court found Appellant guilty of the above-mentioned crimes. On June 10, 2020, the court sentenced Appellant to an aggregate 3-6 years' incarceration plus two years' probation.

Appellant timely filed a notice of appeal on July 10, 2020. On August 20, 2020, the court ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Appellant filed two requests for an extension of time upon receipt of all transcripts. The court granted the requested extensions, and Appellant filed his Rule 1925(b) statement on December 12, 2020.

Appellant raises the following issue for our review:

> Did the trial court err in denying suppression of evidence including Appellant's cell phone, the contents of the cell phone, and Appellant's statements to the police, where Appellant's person was seized without reasonable suspicion or probable cause, his cell phone was seized and searched without a search warrant(s), and without exigent circumstances, and Appellant's rights to be free from illegal searches and seizures were violated under the federal and state constitution?

(Appellant's Brief at v).

"Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." *Commonwealth v. H. Williams*, 941 A.2d 14, 26 (Pa.Super. 2008) (*en banc*) (internal citations omitted).

> [W]e may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.

*Id.* at 27. The reviewing court's scope of review is limited to the evidentiary record of the pre-trial hearing on the suppression motion. *In re L.J.*, 622 Pa. 126, 79 A.3d 1073 (2013). "It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony." *Commonwealth v. Luczki*, 212 A.3d 530, 542 (Pa.Super. 2019) (quoting *Commonwealth v. Clemens*, 66 A.3d 373, 378 (Pa.Super. 2013)). If appellate review of the suppression court's decision "turns on allegations of legal error," then the trial court's legal conclusions are nonbinding on appeal and subject to plenary review. *Commonwealth v. Smith*, 164 A.3d 1255, 1257 (Pa.Super. 2017) (quoting *Commonwealth v. P. Jones*, 121 A.3d 524, 526-27 (Pa.Super. 2015), *appeal denied*, 635 Pa. 750, 135 A.3d 584 (2016)).

Appellant argues that he was not free to leave when Officer Bielecki arrived at Appellant's vehicle and directed Appellant to roll down his window. Appellant asserts he was subject to a custodial detention requiring probable cause. Appellant insists the officer lacked probable cause to seize Appellant because the only information Officer Bielecki had about Appellant at that time was that Appellant was sitting in a legally parked car, with a woman, and the

officer smelled an odor of marijuana. On these limited facts, Appellant maintains the police had no information that would lead them to reasonably believe that Appellant was involved in any criminal activity. Appellant insists that the odor of marijuana on its own is insufficient to constitute probable cause.

Appellant also contends that after he exited his vehicle, Officer Bielecki unlawfully took possession of Appellant's cell phone and placed it on the hood of Appellant's vehicle.[2] Appellant claims this act was illegal because the officer lacked reasonable suspicion or probable cause to believe the phone was being used for a criminal purpose. Appellant emphasizes the officer's testimony that he took the phone because "I usually don't like people having different items in their hands if I'm investigating something." (Appellant's Brief at 14). Appellant avers the police subsequently conducted an illegal warrantless search of his cell phone when another officer dialed the phone number listed in the prostitution advertisement which prompted Appellant's cell phone to ring. By monitoring Appellant's phone to see if it would ring, Appellant suggests the officer essentially accessed information contained within

_____

[2] The Commonwealth claims Appellant waived his challenge to the seizure of the cell phone because Appellant failed to raise it at the suppression hearing. Nevertheless, the record confirms that before the hearing commenced, Appellant stated that he sought to suppress the unlawful "taking of the telephone." (*See* N.T. Suppression Hearing, 11/12/19, at 3). Thus, we decline the Commonwealth's invitation to find waiver and we will address the merits of this issue.

Appellant's cell phone without a warrant. Appellant concludes the court erred in denying his suppression motion, and this Court should reverse and grant a new trial. We disagree.

The Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution guarantee the right of the people to be secure in their persons, houses, papers, and possessions from unreasonable searches and seizures. *Commonwealth v. Morrison*, 166 A.3d 357, 363-64 (Pa.Super. 2017). "To secure the right of citizens to be free from unreasonable search and seizure, courts in Pennsylvania require law enforcement officers to demonstrate ascending levels of suspicion to justify their interactions with citizens to the extent those interactions compromise individual liberty." *Commonwealth v. Hampton*, 204 A.3d 452, 456 (Pa.Super. 2019). Because interactions between law enforcement and the general citizenry are widely varied, search and seizure law examine how the interaction is classified and if a detention has occurred. *Commonwealth v. DeHart*, 745 A.2d 633, 636 (Pa.Super. 2000).

The focus of search and seizure law "remains on the delicate balance of protecting the right of citizens to be free from unreasonable searches and seizures and protecting the safety of our citizens and police officers by allowing police to make limited intrusions on citizens while investigating crime." *Commonwealth v. Moultrie*, 870 A.2d 352, 356 (Pa.Super. 2005) (quoting *Commonwealth v. Blair*, 860 A.2d 567, 571 (Pa.Super. 2004)) (internal

quotation marks omitted). "[I]n assessing the lawfulness of citizen/police encounters, a central, threshold issue is whether...the citizen-subject has been seized." *Commonwealth v. Strickler*, 563 Pa. 47, 57, 757 A.2d 884, 889 (2000).

Contacts between the police and citizenry fall within three general classifications:

> The first [level of interaction] is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention" must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

*Commonwealth v. Goldsborough*, 31 A.3d 299, 305 (Pa.Super. 2011), *appeal denied*, 616 Pa. 651, 49 A.3d 442 (2012) (quoting *Commonwealth v. Bryant*, 866 A.2d 1143, 1146 (Pa.Super. 2005), *appeal denied*, 583 Pa. 668, 876 A.2d 392 (2005)). Police must have reasonable suspicion that a person seized is engaged in unlawful activity before subjecting that person to an investigative detention. *Commonwealth v. Cottman*, 764 A.2d 595 (Pa.Super. 2000).

> An investigative detention, unlike a mere encounter, constitutes a seizure of a person and thus activates the protections of Article 1, Section 8 of the Pennsylvania Constitution. To institute an investigative detention, an officer must have at least a reasonable suspicion that criminal activity is afoot. Reasonable suspicion requires a finding that based on the available facts, a person of reasonable caution would believe the intrusion was

appropriate.

\*     \*     \*

Reasonable suspicion exists only where the officer is able to articulate specific observations which, in conjunction with reasonable inferences derived from those observations, led him reasonably to conclude, in light of his experience, that criminal activity was afoot and that the person he stopped was involved in that activity. Therefore, the fundamental inquiry of a reviewing court must be an objective one, namely, whether the facts available to the officer at the moment of intrusion warrant a [person] of reasonable caution in the belief that the action taken was appropriate.

*Commonwealth v. B. Jones*, 874 A.2d 108, 116 (Pa.Super. 2005) (internal citations omitted). "There is no clear formula for determining whether an interaction constitutes a mere encounter or an investigative detention, but we are guided by the question of whether a reasonable person, based on the totality of the circumstances, would believe he is free to leave." *Commonwealth v. Plante*, 914 A.2d 916, 921-22 (Pa.Super. 2006),

"[T]he question of whether reasonable suspicion existed at the time of an investigatory detention must be answered by examining the totality of the circumstances to determine whether there was a particularized and objective basis for suspecting the individual stopped of criminal activity." *Cottman, supra* at 598-99 (quoting *Commonwealth v. Beasley*, 761 A.2d 621, 625-26 (Pa.Super. 2000), *appeal denied*, 565 Pa. 662, 775 A.2d 801 (2001)).

In making this determination, we must give due weight…to the specific reasonable inferences the police officer is entitled to draw from the facts in light of his experience. Also, the totality of the circumstances test does not limit our inquiry to an examination of only those facts that clearly

- 8 -

indicate criminal conduct. Rather, even a combination of innocent facts, when taken together, may warrant further investigation by the police officer.

*Commonwealth v. Young*, 904 A.2d 947, 957 (Pa.Super. 2006), *appeal denied*, 591 Pa. 664, 916 A.2d 633 (2006) (internal citations and quotation marks omitted).

An arrest or "custodial detention" must be supported by probable cause:

> Probable cause is made out when the facts and circumstances which are within the knowledge of the officer at the time of the arrest, and of which he has reasonably trustworthy information, are sufficient to warrant a [person] of reasonable caution in the belief that the suspect has committed or is committing a crime. The question we ask is not whether the officer's belief was correct or more likely true than false. Rather, we require **only a probability**, and not a *prima facie* showing, of criminal activity. In determining whether probable cause exists, we apply a totality of the circumstances test.

*Commonwealth v. R. Williams*, 2 A.3d 611 (Pa.Super. 2010) (*en banc*), *appeal denied*, 610 Pa. 586, 19 A.3d 1051 (2011) (internal citations and quotation marks omitted) (emphasis in original).

"The key difference between an investigative and a custodial detention is that the latter 'involves such coercive conditions as to constitute the functional equivalent of an arrest.'" *Commonwealth v. Gonzalez*, 979 A.2d 879, 887 (Pa.Super. 2009) (quoting *Commonwealth v. Pakacki*, 587 Pa. 511, 519, 901 A.2d 983, 987 (2006)). Unlike a custodial detention or a formal arrest, an investigative detention does not require probable cause because it lacks the same magnitude of coercive conditions. *Commonwealth v.*

***Douglass***, 539 A.2d 412 (Pa.Super. 1988).

> The court considers the totality of the circumstances to determine if an encounter is investigatory or custodial, but the following factors are specifically considered: the basis for the detention; the duration; the location; whether the suspect was transported against his will, how far, and why; whether restraints were used; the show, threat or use of force; and the methods of investigation used to confirm or dispel suspicions.

***Commonwealth v. Teeter***, 961 A.2d 890, 899 (Pa.Super. 2008).

Additionally, the odor of marijuana can supply reasonable suspicion or probable cause in certain circumstances:

> The odor of marijuana alone, absent any other circumstances, cannot provide individualized suspicion of criminal activity when hundreds of thousands of Pennsylvanians can lawfully produce that odor. What it does provide to police is a general, probabilistic suspicion of criminal activity based on the fact that most citizens cannot legally consume marijuana. Thus, it is a factor that can contribute to a finding of probable cause, consistent with prior precedent…, assuming some other circumstances supply more individualized suspicion that the activity is criminal. This does not imply a change in the probable cause test, because, previously, the possession of marijuana was universally illegal. That universal factual circumstance established particularized suspicion of criminal activity, because every instance of possession of marijuana was previously a crime.

***Commonwealth v. Barr***, 240 A.3d 1263, 1287 (Pa.Super. 2020), *appeal granted*, No. 583 MAL 2020, 2021 WL 1661050 (Pa. Apr. 28, 2021).[3]

_____

[3] The Supreme Court granted allowance of appeal limited to the following issues: (1) What weight, if any, should the odor of marijuana be given in determining whether probable cause exists for a warrantless vehicle search,
*(Footnote Continued Next Page)*

Consequently, "[o]dor is a factor that can contribute to a finding of probable cause, assuming other circumstances supply more individualized suspicion that the activity is criminal." **Commonwealth v. Grooms**, 247 A.3d 31, 40 (Pa.Super. 2021). **See also Commonwealth v. Foy**, No. 376 WDA 2019, 2021 WL 141509 at *3 (Pa.Super. filed Jan 15, 2021) (unpublished memorandum)[4] (holding police had reasonable suspicion to stop appellant based on odor of fresh and burnt marijuana, along with appellant's red and glassy eyes; officer had reasonable grounds to suspect that appellant was illegally in possession of marijuana to justify investigative detention; since possession of marijuana is still illegal in Pennsylvania unless Medical Marijuana Act applies, officer's suspicion of criminal activity being afoot was reasonable; officer did not need to have absolute proof that possession of marijuana was illegal; trial court did not err by relying on "plain smell" principle to deny suppression motion on that ground).

"A search occurs when police intrude upon a constitutionally protected area without the individual's explicit or implicit permission." **Commonwealth v. Fulton**, 645 Pa. 296, 317, 179 A.3d 475, 487-88 (2018). "To constitute

---

in light of the enactment of the Medical Marijuana Act, 35 P.S. § 10231.101 *et seq*.?; and (2) To what extent does this Court's decision in **Commonwealth v. Hicks**, 652 Pa. 353, 208 A.3d 916 (2019), apply to probable cause determinations involving the possession of marijuana following the enactment of the Medical Marijuana Act, 35 P.S. § 10231.101 *et seq*.?

[4] **See** Pa.R.A.P. 126(b)(2) (stating non-precedential decisions of Superior Court filed after May 1, 2019 may be cited for their persuasive value).

such an intrusion, the action need not uncover something 'of great personal value'; even a small, seemingly insignificant act of information gathering by police in a constitutionally protected area is a search." ***Id.*** at 317, 179 A.3d at 488. "It is well-settled that the extraction of data from a cell phone constitutes a search that requires police to obtain a search warrant prior to extraction." ***Commonwealth v. Knoble***, 188 A.3d 1199, 1207 (Pa.Super. 2018), *appeal denied*, 649 Pa. 667, 198 A.3d 332 (2018).

In ***Fulton, supra***, our Supreme Court held that a detective's (1) warrantless act of powering up a flip phone constituted a search; (2) the act of navigating through the flip phone's menus to obtain its number was a search; and (3) monitoring the flip phone's incoming calls and text messages was a search. ***See id.*** at 318, 179 A.3d at 488. Specifically, the Court explained:

> Turning on the phone exposed to view portions of the phone that were previously and not otherwise authorized by a warrant or an exception to the warrant requirements. Powering on the phone is akin to opening the door to a home. It permitted police to obtain and review a host of information on the cell phone, including viewing its wallpaper, reviewing incoming text messages and calls, and accessing all of the data contained in the phone.
>
> … After powering on the phone, [the detective] navigated through the menus of the flip phone to obtain its number. … [The U.S. Supreme Court has] rejected the…conclusion that accessing a cell phone to obtain its phone number was permissible without a warrant. The act of navigating the menus of a cell phone to obtain the phone's number is unquestionably a search that required a warrant.
>
> … To aid in [the detective's] investigation of [victim's]

murder, he kept the phone powered on, monitoring the calls and text messages that came through by viewing the number and/or assigned name of the individual calling or texting on the flip phone's internal or external display. The day after the phone was delivered to homicide, [the detective] reviewed a number of calls and texts that were incoming during the course of time that the phone was in the homicide unit, and then answered a phone call… …

Contrary to the finding of the trial court and the argument advanced by the Commonwealth before this Court, there is little difference between monitoring the internal and external viewing screens on a cell phone and searching the phone's call logs. Both result in accessing more than just phone numbers, but also any identifying information that an individual might add to his or her contacts, including the caller's photograph, the name assigned to the caller or sender of the text message. Further, and unlike a call log, monitoring a phone's incoming text messages allows the viewer to see the content of a text message, which indisputably constitutes private data. …

*Id.* at 318-19, 179 A.3d at 488-89 (internal citations and quotation marks omitted).

Instantly, Officer Bielecki testified at the suppression hearing that he works as a Bensalem Township Police Officer in the special investigation unit. (*See* N.T. Suppression Hearing, 11/12/19, at 8). On September 24, 2018, he and other officers took part in an investigation of online website advertisements for prostitution. (*Id.*) One of the police officers dialed a telephone number included in an online advertisement to arrange a meeting. (*Id.* at 10). The officer arranged the meeting to occur in Room 314 of the Neshaminy Inn. (*Id.* at 10). Before the meeting, the police conducted a pre-surveillance investigation. (*Id.*) During this investigation, Officer Bielecki

observed two females walking together at a nearby Dunkin' Donuts. (*Id.* at 13). Subsequently, he discovered from the Inn's front desk that the registered guest for Room 314 was Ms. Brownlee, and he viewed a photocopy of Ms. Brownlee's driver's license. (*Id.*) He recognized Ms. Brownlee as one of the women he had recently seen walking near the Dunkin' Donuts. (*Id.*) As part of the pre-surveillance investigation, the police checked "to see if there's anybody either coming or going from the room [314], if there's a high traffic, if there's other people paying attention to certain rooms, if we have that room already or not." (*Id.* at 11). The police conduct this additional surveillance "[b]ecause it's common there could be a pimp or somebody who was there for protection or another female who is involved." (*Id.* at 12). Often this additional person is nearby to assist the woman located inside the hotel room. (*Id.*)

As soon as the other police officers contacted Ms. Brownlee inside Room 314, Officer Bielecki noticed a Dodge Charger parked in the lot under this room. (*Id.* at 13). Officer Bielecki saw Appellant and a female sitting inside this vehicle. (*Id.*) He immediately recognized the female passenger as the same woman who he had seen earlier walking with Ms. Brownlee at the Dunkin' Donuts. (*Id.*) Officer Bielecki approached the vehicle, and he immediately detected an odor of marijuana coming from the vehicle. (*Id.* at 14). Officer Bielecki instructed Appellant to exit the vehicle. (*Id.*) The court found Officer Bielecki's testimony credible, and it accepted his testimony in its

entirety. (*See id.* at 34-35).[5]

Initially, we must decide whether Officer Bielecki's interaction with Appellant constituted an investigatory detention (as the Commonwealth suggests and the trial court found), or a custodial detention (as Appellant claims). Our review of the record shows that Officer Bielecki approached Appellant alone and asked Appellant to roll down his window and exit the vehicle. (*See id.* at 13). Significantly, the officer did not transport Appellant, handcuff him, or threaten to use any force. Although Appellant claims that he "was not free to leave," that fact by itself is not the hallmark of a custodial detention, as an investigatory detention also subjects a suspect to a stop and a period of detention. *See Goldsborough, supra*. Under the totality of the circumstances, we cannot agree with Appellant's position that Officer Bielecki's instruction for Appellant to roll down his window and exit his vehicle constituted such coercive conditions as to constitute the functional equivalent of an arrest. *See Pakacki, supra*; *Gonzalez, supra*; *Teeter, supra*; *Douglass, supra*. Rather, the record supports the suppression court's finding that the encounter amounted to an investigatory detention. *See, e.g., Plante, supra* (holding officer's encounter with appellant amounted to investigatory detention and not custodial detention where: officer observed

---

[5] We are cognizant that the suppression court as factfinder has the sole discretion to pass on the credibility of witnesses and the weight to be given their testimony. *See Luczk, supra*.

passenger vehicle parked by loading dock in industrial area where cars are not permitted; officer found two individuals nearby, who claimed they were "going to the bathroom;" officer told men to leave but as they drove away, officer noticed numerous radio antennae on trunk of vehicle, which further raised officer's suspicion; officer had doubts about suspects' statements that they were just looking for place to urinate, given their distance from car when he saw them, their demeanor, and way in which car was parked; officer conducted traffic stop of vehicle and observed numerous radios installed and operating on dash of vehicle; officer "was aware that individuals engaging in criminal activity often possess such devices to track the location of police;" officer asked men to step out of vehicle, out of concern for his safety).

The record further supports the suppression court's decision that Officer Bielecki had reasonable suspicion to conduct an investigatory detention. The following facts support this determination. Officer Bielecki approached Appellant after discovering Appellant parked in a car directly below room 314. Based on his training and experience, Officer Bielecki knew that pimps or other individuals associated with prostitutes tended to be located nearby. Officer Bielecki immediately recognized the female passenger in the car with Appellant as the woman he had previously seen with Ms. Brownlee, who was the registered occupant of Room 314. (*Id.* at 13). Further, Officer Bielecki detected an odor of marijuana emanating from the Appellant's vehicle when he approached it. (*Id.* at 14). Under the totality of the circumstances, Officer

Bielecki had articulable specific observations including Appellant's location, his passenger and the odor of marijuana that led him reasonably to conclude, in light of his experience, that criminal activity was afoot and that Appellant was involved in that activity.[6] *See B. Jones, supra*; *Cottman, supra*; *Foy, supra*.

Regarding Appellant's complaint that the officer "seized" his cell phone, the record shows that once Appellant exited the vehicle, Officer Bielecki noticed that Appellant "had a cell phone, and as [Appellant] exited[, Officer Bielecki] asked [Appellant] to place [the cell phone] or [Officer Bielecki] placed [the cell phone] on top of the vehicle." (*See* N.T. Suppression Hearing at 14). Officer Bielecki explained that during his investigations he does not like the subjects being interviewed to have any items in their hands. (*Id.* at 17).

Even if it was Officer Bielecki who placed the cell phone on top of the car, we cannot agree with Appellant's classification of this event as a "seizure." Rather, the placement of Appellant's cell phone on top of the vehicle constituted only a minor inconvenience during which the officer would have touched Appellant's phone for only a moment. *See, e.g., Commonwealth v. Lyles*, 54 A.3d 76, 83 (Pa.Super. 2012) (explaining that police demand for suspect to keep hands out of pockets is "minor inconvenience" and "not a

_____

[6] Even if the interaction had amounted to a custodial detention, these facts would have also supplied the officer with the requisite probable cause. *See R. Williams, supra*; *Grooms, supra*; *Barr, supra*.

substantial impairment on [a defendant's] liberty of movement, particularly considering the officers' legitimate concerns for their own safety"); **Commonwealth v. Coleman**, 19 A.3d 1111 (Pa.Super. 2011) (noting that officer's request that defendant remove his hands from his pockets did not constitute a seizure).

We further disagree with Appellant's contention that the police "searched" his phone when Officer Bielecki asked another officer to dial the telephone number listed in the online prostitution advertisement, which prompted Appellant's phone to ring. Although Appellant relies on **Fulton, supra**, that case is distinguishable. Here, Officer Bielecki did not take custody of Appellant's phone or manipulate it in any way to actively monitor the phone for private information.[7] **Compare Fulton, supra**. Because the trial court's factual findings are supported by the record, the court's suppression ruling was proper. **See H. Williams, supra**. Accordingly, we affirm.

Judgment of sentence affirmed.

_____

[7] Decisions from other jurisdictions support this view. **See, e.g., United States v. Chambers**, 2017 WL 4005641 (D. Del. Sept. 12, 2017) (concluding officer's phone call to defendant's phone was not search under Fourth Amendment); **United States v. Pacheco**, 2015 WL 3402832 (W.D.N.Y. May 27, 2015) (holding officer did not search defendant's cell phone when he dialed number using his own cell phone and observed defendant's phone ringing). Although decisions of the federal courts and other state courts are not binding on this Court, they can be cited for persuasive value in this Commonwealth. **See Commonwealth v. Seskey**, 170 A.3d 1105, 1109 (Pa.Super. 2017).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>8/10/2021</u>